In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1016

DIANA PACKMAN,

Plaintiff-Appellant,

v.

CHICAGO TRIBUNE COMPANY, an Illinois
Corporation, and FRONT PAGE NEWS,
INCORPORATED, a California Corporation,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 7458--Charles P. Kocoras, Judge.

ARGUED MAY 9, 2001--DECIDED September 27, 2001


   Before RIPPLE, MANION and KANNE, Circuit
Judges.

   RIPPLE, Circuit Judge.  On June 15, 1998,
in recognition of the Chicago Bulls'
sixth National Basketball Association
("NBA") championship, the headline of the
front page of the Chicago Tribune read
"The joy of six." As it has done on
several other historic occasions, the
Chicago Tribune Company reproduced its
entire front page on t-shirts, posters,
plaques and other memorabilia. The
Tribune contracted with Front Page News,
Inc., to print on t-shirts a collage
comprised of the Tribune masthead and six
headlines describing each of the Bulls'
NBA victories, including "The joy of six"
headline.

   Diana Packman holds federal and Illinois
trademarks for the phrase "the joy of
six," for use in relation to football and
basketball games. She brought this action
against the Tribune and Front Page under
the Lanham Act for trademark infringement
and unfair competition and Illinois law.
The district court granted the
defendants' joint motion for summary
judgment, holding that the "fair use"
defense defeated Ms. Packman's claims,
and, in the alternative, that there was
no evidence that consumers were likely to

be confused as to the source of the defendants' products. Ms. Packman appeals from the district court's summary judgment ruling, as well as from the court's denial of her motion to compel discovery. For the reasons set forth in the following opinion, we affirm the district court in both respects.

I

BACKGROUND

The phrase "the joy of six" is a play on the 1970s book series The Joy of Sex./1 It has been used to describe positive feelings associated with six of anything, e.g., the birth of sextuplets, a six-run inning in a baseball game, six characters on a television show, and, in this case, six championships in a sporting event.

A.  The History of Ms. Packman's Trademark

Ms. Packman's husband, Richard Packman, began using the phrase "the joy of six" in the mid-1980s to describe a group with whom he exercised at a local health club at 6:00 a.m. In 1994, the Packmans began printing the phrase on flyers to advertise occasional gatherings of family and friends to watch football games. On July 1, 1997, Ms. Packman obtained a federal trademark for "the joy of six" for use in connection with "entertainment services in the nature of football games."/2 Beginning in September 1996, the Packmans began using "the joy of six" to promote outings to watch or attend basketball games and on February 3, 1998, Ms. Packman obtained a federal trademark to use the phrase in connection with "entertainment services in the nature of basketball games."/3 Ms. Packman also printed "the joy of six" on small quantities of hats and t-shirts to promote the gatherings, in connection with National Football League teams pursuing a possible sixth Super Bowl championship, in particular the San Francisco 49ers and the Dallas Cowboys and in relation to the Chicago Bulls' pursuit of a sixth NBA championship.

Ms. Packman did not produce evidence of the number of gatherings or outings, the number of attendees, or the profit, if any, they generated. The record does not contain any documentary evidence of the

Packmans' sales of hats and t-shirts bearing "the joy of six" mark. Taking the Packmans' deposition testimony as true, however, a small quantity of t-shirts and hats were given away, sold to friends and family, or sold at one Ohio retail outlet and generated little, if any, profit. In addition, Mr. Packman sold an unknown number of "The Joy of Six is Coming . . . Chicago Basketball" t-shirts at cost to a homeless street vendor, who presumably resold them. In addition, the Packmans attempted, without success, to negotiate contracts to license "the joy of six" for use in connection with National Football League and NBA teams. Just prior to the Bulls' sixth NBA championship, the Packmans began negotiating a deal for t-shirts bearing "the joy of six" mark to be produced by a Chicago retailer. The Packmans claim, however, that the retailer backed out of the deal after the Tribune introduced its t-shirts bearing the June 15, 1998 front page and "The joy of six" headline.

B.  The Tribune's Use of "the joy of six"

As early as 1996, sportswriters at the Tribune and the Chicago Sun-Times began using "the joy of six" to describe the Bulls' anticipated sixth NBA championship. The Packmans did not protest the use of the phrase they had trademarked, but instead sent a letter, hat and t-shirt to the writers, encouraging them to use the phrase:

Recently granted the registered trademark for "The Joy of Six" slogan, I encourage you to employ this catchy tag line in your writings and reports throughout the 1997-1998 NBA season as the Bulls shoot for their sixth straight year of stellar success.

R.15 at 2. Mr. Packman admitted that, based on this letter, he would not have objected to the writers' using the phrase in a column headline.

On June 15, 1998, the Tribune printed, on its front page directly beneath its masthead, a banner headline that read "The joy of six," describing the sixth NBA championship won by the Bulls the previous night. The headline included a graphic listing the six years in which the Bulls had won championships and the names of the defeated teams. The font and

size of the phrase in the Tribune headline are visibly distinct from the font and size used by the Packmans on their flyers, hats and t-shirts. At least eight other newspapers in the United States used the phrase "the joy of six" in their headlines that day.

As it has done with other historic front pages, the Tribune reproduced its front page, including "The joy of six" headline, on t-shirts, posters, plaques, and other memorabilia, to promote the Tribune and memorialize its coverage of the Bulls' historic victory. The manager of the Chicago Tribune Store, Mary Tremont, decided, without input from the Tribune's editorial board, to reproduce the entire June 15 front page onto these promotional items. The items were sold at the Michigan Avenue Tribune Store, at a storefront of the Tribune's offices in Vernon Hills, and, for one month in 1999, at the Tribune's kiosk in Woodfield Mall. The Tribune also instructed one of its vendors, Front Page News, to create a t-shirt bearing the Tribune masthead amidst a collage of the actual headlines reporting all of the Bulls' championships: "Two for Two: Bulls Still Champs," "Three-mendous," "Ringmasters," "The Jackson Five," and "The joy of six." Anticipating the Bulls' winning the cham pionship and the Tribune's printing a catchy phrase to describe the victory, Ms. Tremont and Front Page designed this shirt before June 15, without knowledge of the exact wording of the headline. The collage t-shirt was sold in the Tribune store and, for four days in 1998, by Front Page to wholesalers.

Shortly after the Tribune's June 15 headline appeared, several of the Packmans' friends and family members con tacted them to congratulate them on their "deal" with the Tribune. These individuals had seen the Tribune's headline and knew of Ms. Packman's trademark on "the joy of six," but there is no evidence that they purchased or attempted to purchase either the Tribune's memorabilia or the Packmans' hats and t-shirts.

C.  Ms. Packman's Lawsuit

On November 16, 1999, nearly 18 months after "The joy of six" appeared on the Tribune's front page and on its

championship memorabilia, Ms. Packman filed a complaint against the Tribune and Front Page, alleging trademark infringement, 15 U.S.C. sec. 1114, unfair competition, 15 U.S.C. sec. 1125(a), and trademark infringement under Illinois law, 765 ILCS 1036/60. Ms. Packman does not challenge the Tribune's printing "The joy of six" on its June 15 front page; she only objects to the reproduction of the Tribune's front page, including "The joy of six" headline, onto promotional memorabilia.

D.  Discovery and Ms. Packman's Motion to Compel

   After filing the complaint, Ms. Packman served defendants with two document requests and a set of interrogatories; she also served the Tribune with a notice of deposition under Fed. R. Civ. P. 30(b)(6). On September 1, 2000, the Tribune produced Ms. Tremont, the manager of the Chicago Tribune Store, for deposition on topics 3 through 9 of Ms. Packman's notice./4 The Tribune refused to produce a witness on topics 1 and 2, which inquired about the Tribune's process and procedures for selecting headlines, in particular "The joy of six" headline for the June 15, 1998 front page. The Tribune maintained that topics 1 and 2 were not relevant because Ms. Packman had admitted that she objected not to the Tribune's use of "The joy of six" on its June 15, 1998 front page, but only to its reproduction of the headline on the championship memorabilia. The Tribune also objected to topics 1 and 2 on First Amendment grounds.

   Discovery closed on September 5, 2000. On that date the parties appeared before the district court for a status conference. Ms. Packman's counsel informed the court that she had not received the discovery she requested because Ms. Tremont was not knowledgeable about three topics in the notice of deposition: (1) the Tribune's process and procedures for avoiding trademark infringement (topic 3); (2) the Tribune's process and procedures for avoiding infringement of "the joy of six" (topic 5); and (3) the Tribune's process and procedures for permitting reproduction of its headlines on products (topic 7). The court instructed Ms. Packman's counsel that, if he had a complaint about

discovery, he should promptly make a motion because the discovery cutoff was that day. The court did not expressly extend the discovery cutoff, but instructed the parties to work out any outstanding issues on their own, and, if necessary, file a prompt motion. At the conference, the defendants also informed the court of their intent to move for summary judgment, and the court set October 3, 2000 as the deadline for filing that motion.

Despite the court's warning "not to tarry" in filing a motion to compel, Ms. Packman waited until October 5, 2000 (two days after the defendants' motion for summary judgment was filed) to do so. R.27-1 at 5. The district court orally denied the motion at a conference on October 27, 2000, on the grounds that: (1) it was untimely, having been filed after the close of discovery and without explanation for the undue delay; (2) it sought information, i.e., the headline selection policy, that was not relevant because it was not the basis of Ms. Packman's claims; and (3) no witness other than Ms. Tremont could articulate a more express policy for permitting others to reproduce the Tribune's headlines on products.

E.   The District Court's Decision

On October 3, 2000, the Tribune and Front Page filed a joint motion for summary judgment, and on November 9, 2000, Ms. Packman filed a cross-motion for summary judgment on defendants' liability. On December 6, 2000, the district court granted defendants' motion and denied Ms. Packman's motion./5 The court found that defendants employed "The joy of six" in a non-trademark use in good faith to describe a characteristic of their product, and, accordingly, the "fair use" defense protected them from liability for trademark infringement or unfair competition under the Lanham Act. In the alternative, the district court found that Ms. Packman could not prevail on her trademark infringement claim because consumers were not likely to be confused about the source of the Tribune's goods. The court declined to address the two other arguments advanced by defendants in support of their motion: that Ms. Packman's "the joy of six" was not a valid trademark because the phrase

was generic or, at most, descriptive; and that the Tribune had a First Amendment right to reproduce any of its front pages to promote its newspaper. Having dismissed Ms. Packman's federal claims, the court also declined to exercise supplemental jurisdiction over her state law trademark infringement claim./6 This appeal followed.

II

DISCUSSION

A. Motion for Summary Judgment

This court reviews de novo the district court's decision to grant summary judgment. Albiero v. City of Kankakee, 246 F.3d 927, 931 (7th Cir. 2001). Only a "genuine" issue of "material" fact precludes summary judgment. Fed. R. Civ. P. 56(c). Factual disputes are "'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the [non-movant],'" and are "'material' only when they 'might affect the outcome of the suit under the governing law.'" Oest v. Ill. Dep't of Corrections, 240 F.3d 605, 610 (7th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, in ruling on a summary judgment motion, the district court must decide "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Oest, 240 F.3d at 610 (quoting Liberty Lobby, 477 U.S. at 248).

In reviewing the district court's decision, we "must construe all facts in the light most favorable to the non-moving party." Albiero, 246 F.3d at 931. The non-movant may not rest on the pleadings but must adduce evidence "set[ting] forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Ms. Packman must create more than mere doubt as to the

material facts, see Albiero, 246 F.3d at 932 (citations omitted), and will not prevail by relying on a mere scintilla of evidence or speculation to support her position, see Liberty Lobby, 477 U.S. at 252; Patterson v. Chicago Ass'n for Retarded Citizens, 150 F.3d 719, 724 (7th Cir. 1998) (stating that plaintiff's speculation is "not a sufficient defense to a summary judgment motion") (citation omitted).

In a trademark infringement case, the classification of a word or phrase as descriptive, the determination that a de fendant's use was a non-trademark use in good faith, and the finding that consumers are not likely to be confused about the origin of a defendant's products are questions of fact. Nevertheless, these issues may be resolved on summary judgment "if the evidence is so one-sided that there can be no doubt about how the question should be answered." Door Sys., Inc. v. Pro-Line Door Sys., Inc., 83 F.3d 169, 171 (7th Cir. 1996). With these principles in mind, we turn to Ms. Packman's claims.

Ms. Packman submits that, in holding that the fair use defense barred her claims, the district court ignored evidence of defendants' use of "The joy of six" as a trademark and improperly inferred that defendants acted in good faith. She further argues that the district court committed both factual and legal errors in its likelihood of confusion analysis, and that defendants used the same mark for the same goods in the same geographical area in a manner likely to confuse and which actually confused consumers. At least, she contends, she demonstrated genuine issues of material fact as to the fair use defense and the likelihood of confusion analysis. In addition, Ms. Packman contends that the district court abused its discretion in denying her motion to compel discovery on the issue of defendants' intent in selecting "The joy of six" for its front page and in reproducing its front page on championship memorabilia.

Defendants respond that the district court properly granted summary judgment in their favor because they used "The joy of six" in good faith as a descriptive phrase. They also submit that the

undisputed evidence demonstrates that there was no likelihood that any consumer would mistake the Tribune's memorabilia for one of Ms. Packman's products. They also maintain that Ms. Packman's "the joy of six" mark is a descriptive phrase unworthy of trademark protection./7 Finally, they contend that the district court did not abuse its discretion in denying Ms. Packman's motion to compel discovery because it was both untimely and immaterial.

1.  The Lanham Act

The Lanham Act protects registered marks from interference by state legislation, prevents unfair competition, and protects against fraud "by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks." 15 U.S.C. sec. 1127; Eli Lilly & Co. v. Natural Answers, Inc., 233 F.3d 456, 461 (7th Cir. 2000). To prevail on a Lanham Act claim, a plaintiff must establish that (1) her mark is protectable, and (2) the defendant's use of the mark is likely to cause confusion among consumers. Eli Lilly, 233 F.3d at 461./8

A trademark includes:

any word, name, symbol, or device, or any combination thereof [used by any person] to identify and distinguish his or her goods, including a unique product, from those manufactured and sold by others and to indicate the source of the goods, even if that source is unknown.

15 U.S.C. sec. 1127. In order to be registered, a mark must distinguish the applicant's goods from those of others. See 15 U.S.C. sec. 1052. The law recognizes five categories of trademarks, in ascending order of distinctiveness: generic, descriptive, suggestive, arbitrary, and fanciful. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992); Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9-11 (2d Cir. 1976) (Friendly, J.). Once a mark is registered, the Act affords a plaintiff one of two presumptions: (1) that her registered trademark is not merely descriptive or generic; or (2) that if descriptive, the mark is accorded secondary meaning. See Liquid Controls Corp. v. Liquid Control Corp., 802 F.2d

934, 936 (7th Cir. 1986). The Act provides that:

a mark registered on the principal register . . . shall be prima facie evidence of the validity of the registered mark . . . and of the registrant's exclusive right to use the mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein, but shall not preclude another person from proving any legal or equitable defense or defect . . . which might have been asserted if such mark had not been registered.

15 U.S.C. sec. 1115(a). Secondary meaning exists "only if most consumers have come to think of the word not as descriptive at all but as the name of the product." Blau Plumbing, 781 F.2d at 609; see Part II.A.2.b, infra.

The defendant may overcome this presumption with evidence that the mark is merely generic or descriptive, or that it lacks secondary meaning. See Liquid Controls, 802 F.2d at 936 (citations omitted). And, even if the mark is sufficiently distinctive to warrant trademark protection, the defendant may still prevail by showing that its use of the mark is not "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. sec. 1114(1)(a); see Sunmark, Inc. v. Ocean Spray Cranberries, Inc., 64 F.3d 1055, 1060 (7th Cir. 1995). In addition to attacking the validity of the plaintiff's mark, the defendant may also invoke the "fair use" defense bydemonstrating that the alleged infringement "is a use, otherwise than as a mark . . . which is descriptive of and used fairly and in good faith only to describe the goods or services of such party . . . ." 15 U.S.C. sec. 1115(b)(4); see M.B.H. Enter., Inc. v. WOKY, Inc., 633 F.2d 50, 52 (7th Cir. 1980). This defense "is based on the principle that no one should be able to appropriate descriptive language through trademark registration." Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947, 951 (7th Cir. 1992).

In this case, defendants asserted the fair use defense in addition to arguing that there was no likelihood of confusion and that Ms. Packman's mark was invalid.

The district court did not rule on the validity of the mark, nor shall we, because the fair use defense and likelihood of confusion analysis dispose of Ms. Packman's claims in their entirety.

## 2. The Fair Use Defense

To prevail on the fair use defense, defendants must show that: (1) they used "The joy of six" in a non-trademark use; (2) the phrase is descriptive of their goods or services; and (3) they used the phrase "fairly and in good faith" only to describe their goods or services. 15 U.S.C. sec. 1115(b)(4); Sands, Taylor & Wood, 978 F.2d at 951; M.B.H. Enter., 633 F.2d at 52.

### a. Non-Trademark Use

The district court held that, because Ms. Packman did not rebut evidence that defendants used "the joy of six" only in a descriptive manner, she failed to raise a genuine issue of material fact as to the nature of defendants' use of the phrase. Ms. Packman contends that, in reaching this conclusion, the district court ignored facts showing that defendants' use of "The joy of six" was a traditional trademark use: (1) defendants applied the mark directly to the goods; (2) defendants labeled the items with the phrase; and (3) the phrase is the most prominent text on all the items and, in her view, was used as "an attention-getting symbol." Appellant's Br. at 15. We agree with the district court that Ms. Packman failed to rebut the evidence of defendants' descriptive, non-trademark use of "The joy of six."

First, the record does not support Ms. Packman's argument that the Tribune used "The joy of six" to identify itself as the source of the newspaper or the championship memorabilia. Rather, the Tribune's distinctive masthead, which appears prominently on the front page and on each piece of memorabilia containing the phrase, identifies the source of the products. In addition, the Tribune masthead also prominently appears on one side of the products' tags, plainly indicating the Tribune as the source. The masthead signifies that the products come from the Tribune and not any of the other newspapers that ran the same headline on

June 15, 1998. The Tribune's use of its well-known masthead also identifies the phrase as a newspaper headline reporting on an event, and not as a Tribune trademark. Cf. M.B.H. Enter., 633 F.2d at 54 (radio station's call letters and frequency, not slogan, identified source of advertising). The phrase "The joy of six" does not identify the source of any of the defendants' memorabilia, and thus, the defendants' use was "otherwise than as a [trade]mark." 15 U.S.C. sec. 1115(b)(4); cf. Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc., 149 F.3d 722, 728 (7th Cir. 1998) (because "platinum" described quality of mortgage services and did not identify particular source or designate specific origin of services, it was not entitled to trademark protection absent proof of secondary meaning); M.B.H. Enter., 633 F.2d at 55 (defendant's "I LOVE YOU" slogans attributed quality of civic involvement and words, by themselves, did not designate source of services and thus did not constitute trademark use).

Second, Ms. Packman ignores her own deposition testimony, in which she admitted that, in the context of the Bulls, "the joy of six" referred to happiness about their six championships and that the phrase is widely used to de scribe the joy of six of anything. The Tribune used the phrase "The joy of six" to describe the happiness associated with six Bulls' championships. On the front page of the Tribune and the championship memorabilia, "The joy of six" reflects that very emotion. See Sunmark, 64 F.3d at 1059 (word or mark is considered descriptive if it merely refers to a characteristic of the product).

Our decision in Sunmark supports the district court's finding that the Tribune did not employ "The joy of six" as a trademark. In Sunmark, the maker of "SweeTARTS" candy sought to enjoin Ocean Spray from using the phrase "sweet-tart" to describe its cranberry juice drinks. In addition to finding that Ocean Spray had used "sweet-tart" merely to describe the taste of its drinks, this court noted that Ocean Spray had not claimed exclusive use of the phrase and could not object if other juice-makers used it. See Sunmark, 64 F.3d at 1059. Nor could these defendants have objected to wide use of the phrase, as evidenced by several other

newspapers' printing "the joy of six" headline on June 15, 1998, to describe the Bulls' championships and the varied use of the phrase to describe positive emotions associated with six of anything, such as sextuplets.

Sands, Taylor & Wood, on which Ms. Packman relies, is distinguishable. The fair use defense was unavailable in that case because the defendant's slogan, "Gatorade is Thirst-Aid," used the plaintiff's "Thirst-Aid" mark as a trademark. Sands, Taylor & Wood, 978 F.2d at 954. Integral to the court's conclusion was evidence that "Thirst-Aid" appeared more prominently than "Gatorade" in the advertisements and that the rhyming quality of the two words created a "memorable slogan . . . uniquely associated" with the defendant's "Gatorade" product. Id. Here, the Tribune used its masthead, not "The joy of six," to foster the association between the products (the memorabilia) and their source (the Tribune). Cf. M.B.H. Enter., 633 F.2d at 54 (defendant's prominent display of its call letters and frequency in connection with "I LOVE YOU" slogans indicated defendant as source of advertisements and thus was non-trademark use). Furthermore, the wide and varied use of "the joy of six" bars a conclusion that any association between the Tribune and the phrase is unique. Cf. Sunmark, 64 F.3d at 1059 (descriptive use of common phrase was unlikely to constitute trademark use). And, the masthead and the phrase appear in proximity to each other, but not as part of a "memorable slogan," rendering any association between the two weaker than was present in Sands, Taylor & Wood.

Accordingly, because Ms. Packman failed to raise a genuine issue of material fact as to the nature of defendants' use of "The joy of six," we agree with the district court that defendants employed the phrase in a non-trademark use.

b.  Defendants Used the Phrase Descriptively

Descriptive terms "'impart information directly.'" M.B.H. Enter., 633 F.2d at 54 (citation omitted). The defendants used "The joy of six" as a headline to describe a newsworthy event and the happiness associated with the Bulls'

sixth NBA championship. This use did not change with the reproduction of the Tribune's front page onto championship memorabilia. As Ms. Packman herself admitted, "the joy of six" is a phrase commonly used to describe the emotions associated with six of anything. Ms. Packman cannot appropriate the phrase to herself and thereby prevent others from using the phrase in a descriptive sense, as defendants did here. See Blau Plumbing, 781 F.2d at 609-10 (a person "cannot appropriate the English language" and thereby render others inarticulate); M.B.H. Enter., 633 F.2d at 55 (owner of registered mark "'may not appropriate to itself common English slang terms and thus prevent others from using such phrases in their descriptive sense'") (citation omitted). The district court correctly concluded that no genuine issue of material fact existed as to defendants' descriptive use of the phrase.

Furthermore, the record lacks any evidence that "the joy of six" had acquired a secondary meaning as used by Ms. Packman, and she does not point to any evidence in rebuttal. Secondary meaning is "a mental association in buyers' minds between the alleged mark and a single source of the product." 2 J. Thomas McCarthy, Trademarks and Unfair Competition sec. 15:5, at 15-9 (4th ed. 2001) (emphasis in original). A mark acquires secondary meaning when it has been used so long and so exclusively by one company in association with its goods or services that the word or phrase has come to mean that those goods or services are the company's trademark. Id. sec. 15:5, at 15-10; see Platinum Home Mortgage, 149 F.3d at 728. Proof of secondary meaning can be established through direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market, and evidence of intentional copying. See Platinum Home Mortgage, 149 F.3d at 728; Spraying Sys. Co. v. Delavan, Inc., 975 F.2d 387, 393 (7th Cir. 1992). Ms. Packman's assertion of secondary meaning is purely speculative. She does not tell us how many shirts or hats the Ohio store or the Chicago street vendor sold, how many items she produced, who purchased them, or whether she advertised her products. See Platinum Home Mortgage, 149

F.3d at 729 (rejecting plaintiff's circumstantial evidence of advertising and sales). Thus, the record confirms the absence of a secondary meaning altogether. Ms. Packman used the mark primarily in connection with small group outings to sporting events, did not commercially advertise her outings or her products, and used the phrase in connection with the Bulls for less than three years. See id., 149 F.3d at 728 (plaintiff who used mark for only three years could not demonstrate that mark had secondary meaning). The phrase "the joy of six" did not achieve a level of distinctiveness with respect to Ms. Packman's goods or services, nor does it exclusively relate to the Bulls' sixth championship. See Spraying Sys., 975 F.2d at 393 (evidence of third-party use of mark cast further doubt on plaintiff's assertion of secondary meaning). Accordingly, the record supports only one conclusion, that "the joy of six" is merely a descriptive phrase without a secondary meaning, a phrase which defendants, or any other person, may rightfully use. See Blau Plumbing, 781 F.2d at 610 (descriptive mark without secondary meaning was unworthy of trademark protection).

c.  Defendants Used the Phrase in Good Faith

  Ms. Packman maintains that the Tribune's knowledge of her trademark (as a result of Mr. Packman's letter to the sportswriters) before running the "The joy of six" headline and its failure to cease its sale of the championship memorabilia after she threatened legal action are evidence of the defendants' bad faith. The district court determined that this evidence did not give rise to an inference of bad faith because Mr. Packman's letter encouraged rather than discouraged use of the phrase, and the Tribune used the phrase in the very manner suggested: as a headline to celebrate the Bulls' success in winning a sixth championship.

  Mere knowledge of Ms. Packman's trademark on the phrase is insufficient to establish that the Tribune acted in bad faith and to preclude summary judgment. See M.B.H. Enter., 633 F.2d at 54. The defendants' good faith "can be judged only by inquiry into [their]

subjective purpose in using the slogan[ ]." Id., 633 F.2d at 54. In M.B.H. Enter., the plaintiff had a registered trademark for the words "I LOVE YOU" for use in entertainment services related to radio programs and had licensed a promotion using the phrase "I LOVE YOU MILWAUKEE" to radio station WISN in Milwaukee. Id. at 51. When radio station WOKY began its own campaign professing its love for Milwaukee, using the phrases "WOKY LOVES MILWAUKEE" and "I LOVE MILWAUKEE" signed by WOKY, the plaintiff sought to enjoin WOKY's efforts. Id. at 52. Addressing the issue of WOKY's good faith, the court found that WOKY's intent to reap commercial advantage from its declarations of love for the city did not demonstrate that WOKY intended to use the phrase as a trademark. Id. at 54. Rather, WOKY's use of its call letters and radio frequency--its trademarks identifying WOKY as the source--in each of the ads suggested that WOKY lacked the intent to use the slogans as trademarks. Id. at 54-56. Accordingly, the court found that WOKY had not acted in bad faith or with the intent to confuse the public about the source of the affection for Milwaukee. Id.

Similarly, the presence of the Tribune's distinctive masthead above "The joy of six" headline and on each piece of championship memorabilia will not support an inference that the Tribune acted in bad faith. Nor does the defendants' receipt of commercial benefit from promoting the newspaper or selling championship memorabilia demonstrate use of "The joy of six" in bad faith. Ms. Tremont, manager of the Tribune Store, testified that she selected the June 15, 1998 front page for reproduction onto memorabilia consistent with the Tribune's practice of capturing historical events reported by the newspaper. This decision was made without editorial input and without knowledge of the exact wording of the headline for that day. Therefore the syntax of the headline played no part in the decision to produce and market the Tribune's products in celebration of the Bulls' sixth championship, and therefore will not support any inference that the defendants acted in bad faith.

Ms. Packman failed to adduce evidence creating a genuine issue of fact as to any of the three elements of the fair use

defense. Accordingly, the district court did not err in finding that defendants' use of "The joy of six" was a non-trademark use, in good faith, to describe a characteristic or quality of their goods.

3. Likelihood of Confusion

In addition to showing that her mark is protected under the Lanham Act, a plaintiff in a trademark infringement suit must demonstrate that the challenged mark is likely to confuse consumers. See Barbeque Marx, Inc. v. 551 Ogden, Inc., 235 F.3d 1041, 1043 (7th Cir. 2000). Without determining the validity of Ms. Packman's "the joy of six" mark, the district court found that she could not prevail because she failed to demonstrate a genuine issue of material fact as to whether consumers were likely to be confused about the source of the defendants' goods. Ms. Packman now argues that, in granting summary judgment for defendants, the district court failed to draw inferences in her favor, ignored evidence of actual confusion and misapplied the likelihood of confusion analysis. Although likelihood of confusion is a question of fact, the issue may be resolved on summary judgment where the evidence is "so one-sided that there can be no doubt about how the question should be answered." Door Sys., 83 F.3d at 171 (affirming summary judgment for defendant where there was "no reasonable likelihood that any significant number of consumers could mistake the defendant for the plaintiff").

Seven factors comprise the likelihood of confusion analysis: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's mark; (6) actual confusion; and (7) intent of the defendant to "palm off" his product as that of another. See Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 897-98 (7th Cir. 2001). No single factor is dispositive, and courts may assign varying weights to each of the factors depending on the facts presented, although, in many cases, the similarity of the marks, the defendant's intent, and

actual confusion are particularly important. Id. at 1044.

a. Similarity of the Marks

In determining whether two marks are similar, the comparison is made "'in light of what happens in the marketplace,' [and] not merely by looking at the two marks side-by-side." Ty, Inc., 237 F.3d at 898 (citations omitted). Ms. Packman argues that the defendants' mark is identical to hers. While she is correct that the words are the same, the appearance and placement of the words are distinct such that a consumer would not associate one product with the other. In Ms. Packman's mark, the words "the joy of six" are placed vertically, with "joy" and "six" in larger print. The letters are script-like, with the words ". . . is coming" printed in smaller letters beneath the word "six." The background of both the hat and the t-shirt is black, with the lettering on the hat a combination of white and blue, and on the t-shirt a combination of orange and gold.

In contrast, "The joy of six" appears on the defendants' white t-shirts in the context of the Tribune's entire June 15, 1998 front page, including all of the other headlines and articles of the day. Beneath the blue and white Tribune masthead, "The joy of six" is printed horizontally in black newsprint-style letters. Below the phrase appears the Bulls' logo, a list of the championship years and defeated teams, and a color photograph of Coach Phil Jackson embracing Michael Jordan. On defendants' black collage t-shirt, a large red "6" encompasses each of the headlines for the six championship years and, the Tribune masthead is displayed prominently. Outside the "6" is printed "NBA CHAMPIONS" and a list of the championship years. Although the words on defendants' and Ms. Packman's t-shirts are the same, the words' appearances do not resemble each other and are not likely to cause confusion. See M.B.H., 633 F.2d at 54 (although words "I LOVE YOU" were identical to plaintiff's mark, defendant's slogan was distinguishable by prominently displayed call letters and frequency). Different packaging, coloring, and labeling can be significant factors in determining whether there is a likelihood of confusion. See Syndicate

Sales, Inc. v. Hampshire Paper Corp., 192 F.3d 633, 637 (7th Cir. 1999). Although hang-tag design and content may often be deserving of comparatively lesser weight than other packaging material, cf. Ty, 237 F.3d at 899, we think that, here, the hang-tag with the Tribune masthead on a product sold out of a Tribune-operated establishment is deserving of some weight. See Syndicate Sales, 192 F.3d at 637 (different packaging, coloring and labeling distinguished defendants' plastic flower baskets from plaintiff's). In sum, the distinctiveness of the marks weighs against a finding of likelihood of confusion.

b.  Defendants' Intent

Another "more important" factor in determining likelihood of confusion is defendants' intent. This factor looks primarily for evidence that the defendants are attempting to "pass off" their products as having come from the plaintiff. See Liquid Controls, 802 F.2d at 940. Although the district court, in its fair use analysis, found that defend ants had acted in good faith, the court did not directly address defendants' intent in its likelihood of confusion analysis.

The "evidence" of defendants' bad faith urged by Ms. Packman--that Mr. Packman's letter to the sportswriters gave the Tribune notice of her trademark--does not demonstrate that they intended to "pass off" their championship memorabilia as having come from Ms. Packman. Rather, the prominent display of the Tribune masthead above "The joy of six" on each of defendants' products demonstrates the Tribune's intent to promote itself as the source. Cf. M.B.H. Enter., 633 F.2d at 54 (display of call letters and frequency was evidence that defendant did not intend to use plaintiff's slogan as a trademark).

Furthermore, using a descriptive phrase such as "the joy of six" is consistent with the inference that defendants intended in good faith to inform consumers about a newsworthy event and characteristic of their products: the celebration of the Bulls' sixth championship victory. See Liquid Controls, 802 F.2d at 940 (explaining that copying descriptive phrase is

consistent with intent to inform consumers about properties of its own product, not to pass off). That defendants may have been aware of Ms. Packman's mark before reproducing "The joy of six" memorabilia does not show fraudulent intent, particularly because the phrase has been widely used to celebrate six of anything (as Ms. Packman admitted) and the appearance of the phrase on defendants' products is visually distinct. See Barbeque Marx, 235 F.3d at 1046 (defendant's knowledge of plaintiff's mark did not show intent to pass off); Ziebart Int'l Corp. v. After Market Assoc., 802 F.2d 220, 227 (7th Cir. 1986) ("mere knowledge" of competitor or its mark does not show fraudulent intent where marks are dissimilar). Moreover, Ms. Tremont's independent decision to reproduce the "The joy of six" headline on the championship memorabilia, without knowledge of Ms. Packman's letter to the Tribune and of her mark, is evidence of good faith. Ms. Packman's conclusory assertions that defendants acted in bad faith are unsupported by evidence in the record and fail to create a genuine issue of material fact. See Albiero, 246 F.3d at 933 (conclusory statements unsupported by the record are insufficient to avoid summary judgment).

c.  Evidence of Actual Confusion

   As evidence that consumers were actually confused by defendants' use of "The joy of six," Ms. Packman points to phone calls she received from two friends, her father, and Mr. Packman's former co-worker who had seen the Tribune's front page and called to congratulate her on her "deal" with the Tribune. The district court correctly rejected this evidence as irrelevant to the question of confusion over the source of defendants' championship memorabilia.

   Ms. Packman did not show that the four individuals had purchased or attempted to purchase "the joy of six" goods, either from her or from defendants, and thus they were not relevant "consumers" under the Lanham Act. See Syndicate Sales, 192 F.3d at 636-37 (plaintiff failed to produce sufficient evidence of actual confusion by relevant group of consumers). Even if the four callers fell

into the relevant category of consumers, however, the district court properly discounted such de minimis evidence of confusion. See Door Sys., 83 F.3d at 173 (evidence that two consumers were misled by defendant's mark did not create "contestable issue" of likelihood of confusion); Sunmark, 64 F.3d at 1060 (evidence that three consumers were confused did not demonstrate likelihood of confusion); Blau Plumbing, 781 F.2d at 610 (de minimis evidence of actual confusion is insufficient to prove likelihood of confusion). Therefore, the district court correctly determined that the four phone calls Ms. Packman received were not probative of, or "material" to, the issue of actual confusion.

d.  Remaining Likelihood of Confusion Factors

   Ms. Packman failed to demonstrate genuine issues of material fact as to the three most important factors in the likelihood of confusion analysis. She also has not demonstrated any issues of fact as to the remaining factors. Although the parties both produced t-shirts and hats, each offered their products in a distinctive style and manner, minimizing the likelihood of confusion. Ms. Packman produced her items primarily in relation to group outings to sporting events, and only alluded to the possibility of the Bulls' sixth championship; in contrast, defendants used "The joy of six" in a newspaper headline and on items celebrating the Bulls' sixth championship. All of defendants' products--and their tags-- prominently display the well-known Tribune masthead, providing a strong indication that there is no likelihood of confusion. See Syndicate Sales, 192 F.3d at 637; Venn v. Goedert, 319 F.2d 812, 816 (8th Cir. 1963) (defendant's prominent display of its name on container, package, wrapping or label informs consumers of source of goods and precludes charge of trademark infringement or unfair competition). Thus, the parties' products were distinct in the manner in which they appeared in the marketplace. See Barbeque Marx, 235 F.3d at 1045 (although both parties served same product (barbeque), evidence of differences in ambience, theme and style weighed against finding likelihood of confusion); Dynamics Res. Corp. v.

Langenau Mfg. Co., 704 F.2d 1575, 1577 (Fed. Cir. 1983) (no likelihood of confusion in using identical mark "DRC" to describe distinctly different products).

In terms of area and manner of use, defendants sold their championship memorabilia from three discrete Tribune-operated locations; Ms. Packman gave away or sold her items out of her home to friends and family. The only store in which her items were sold was located in Ohio, and the only distributor in Chicago was a homeless street vendor, to whom Mr. Packman sold an unknown number of t-shirts. Ms. Packman did not bring forth any evidence to show that her distribution channels in any way overlapped with defendants or that she advertised her products through the same media channels as defendants. Indeed, there is no evidence in the record that either party commercially advertised its products. The distinction between the areas in which the parties' products appeared weighs against finding a likelihood of confusion and Ms. Packman has failed to come forth with sufficient evidence to the contrary. See Smith Fiberglass Prod., 7 F.3d at 1330 (no likelihood of confusion where parties' products were not in direct competition); Elec. Design & Sales, Inc. v. Elec. Data Sys. Corp., 954 F.2d 713, 717-18 (Fed. Cir. 1992) (likelihood of confusion diminished where there was minimal, if any, overlap in customers); cf. Barbeque Marx, 235 F.3d at 1045 (location of defendant's restaurant in distinct Chicago neighborhood minimized likelihood of confusion with plaintiff's restaurant).

When considering the degree of care likely to be exercised by consumers, the district court did not consider the sophistication of potential customers, but this oversight is of no consequence, since Ms. Packman introduced no evidence, other than her own conclusory assertions, about buyers of either her products or defendants'. Thus, she failed to establish a genuine issue of fact as to consumer sophistication, weighing against a finding of likelihood of confusion. See Albiero, 246 F.3d at 933.

Finally, in assessing the strength of Ms. Packman's mark, the district court

correctly concluded that the mark wasrelatively weak; it was a widely used descriptive phrase lacking distinctiveness or recognition with respect to the Bulls' sixth championship. Her own use of the phrase for multiple purposes, from early-morning workout groups to family sporting excursions, negates her unsubstantiated assertion that her mark is strong. See Blau Plumbing, 781 F.2d at 610 (widely used descriptive phrase is weak mark unworthy of trademark protection).

As with the three "more important" factors, Ms. Packman failed to bring forth evidence to establish a genuine issue of fact as to any of the remaining likelihood of confusion factors. Accordingly, the district court correctly determined that Ms. Packman could not prevail on her claims because she had failed to demonstrate a jury question as to likelihood of confusion. See Albiero, 246 F.3d at 934.

B.  Motion to Compel Discovery

District courts have broad discretion in discovery matters, and therefore this court reviews the denial of Ms. Packman's motion to compel discovery for an abuse of discretion. See Kalis v. Colgate-Palmolive Co., 231 F.3d 1049, 1056 (7th Cir. 2000). We shall not reverse the district court's ruling absent a clear showing that the denial of discovery resulted in actual and substantial prejudice to Ms. Packman. See Searls v. Glasser, 64 F.3d 1061, 1068 (7th Cir. 1995).

Based on the timing and the substance of Ms. Packman's motion, we conclude that the district court did not abuse its discretion in denying the motion. Although Ms. Packman had complaints about Ms. Tremont's deposition and the adequacy of defendants' responses to her discovery requests before the close of discovery, and despite the court's warning that she should not "tarry" in filing a motion to compel, she waited to file her motion to compel until after discovery had closed, the summary judgment briefing schedule had been set, and defendants had filed their summary judgment motion. In light of her lack of diligence in pursuing the perceived inadequacies in discovery, the district court did not abuse its

discretion in denying Ms. Packman's motion to compel as untimely. See Kalis, 231 F.3d at 1058 (no abuse of discretion in denying motion to compel filed after discovery closed, summary judgment motion was filed, briefing schedule was set, and plaintiff's response was due); Brill v. Lante Corp., 119 F.3d 1266, 1275 (7th Cir. 1997) (no abuse of discretion in denying motion to compel filed after summary judgment motion filed and despite court's instruction to parties to work out their discovery disputes within one week and file any motions to compel "shortly thereafter").

Furthermore, Ms. Packman has not demonstrated actual and substantial prejudice resulting from the denial of discovery. Topics 1 (the Tribune's headline selection procedures) and 2 (the Tribune's procedures for selecting "The joy of six" as the headline for June 15, 1998) in the Rule 30(b)(6) notice were not relevant, since Ms. Packman is not complaining about, and in fact encouraged, the Tribune's use of "The joy of six" in a literary fashion on its front page. See Griffin v. City of Milwaukee, 74 F.3d 824, 829 (7th Cir. 1996) (no abuse of discretion in denying motion to compel discovery of evidence not relevant to plaintiff's claims); Rennie v. Dalton, 3 F.3d 1100, 1110 (7th Cir. 1993) (same). In addition, Ms. Tremont did testify about her decision to reproduce "The joy of six" headline on the championship memorabilia, a decision she made independent of the editorial process and without knowledge of Ms. Packman's mark. The Tribune thus disclosed all there was to know about topic 7 (the Tribune's procedures for permitting the reproduction of headlines on products) of the Rule 30(b)(6) notice; that Ms. Packman did not receive the answers or information she had hoped to find to support her claims does not amount to prejudice from the denial of discovery. Accordingly, the district court did not abuse its discretion in denying the motion. Cf. Brill, 119 F.3d at 1275 (untimely motion to compel discovery did not relieve plaintiff of burden of producing specific facts to show that genuine issue of material fact existed to defeat motion for summary judgment).

Conclusion

The district court correctly granted summary judgment for defendants because Ms. Packman failed to establish a genuine issue of material fact as to the elements of the fair use defense and the likelihood of confusion. In addition, the district court did not abuse its discretion in denying Ms. Packman's eleventh-hour motion to compel discovery. Accordingly, the judgment of the district court is affirmed.

AFFIRMED

FOOTNOTES

/1 Alex Comfort, The Joy of Sex (1977).
/2 The trademark was registered in Ms. Packman's name for estate planning purposes.

/3 On May 5, 1997, Ms. Packman registered "the joy of six" as a servicemark for use in connection with basketball games under Illinois law.

/4 The Notice listed the following topics for the Tribune's deposition:

(1) Process and procedures used by the Chicago Tribune to select headlines for its newspapers, including but not limited to approvals and clearances needed.

(2) Process and procedures used by the Chicago Tribune to select "THE JOY OF SIX" as the headlines [sic] for the June 15, 1998 edition of its newspaper.

(3) Process and procedures used by the Chicago Tribune to avoid trademark infringement.

(4) Process and procedures used by the Chicago Tribune to avoid infringement of Plaintiff's "THE JOY OF SIX" mark, including procedures and steps taken to avoid willful infringement.

(5) Process and procedure used by the Chicago Tribune to select portions of its publications that are reproduced on products, such as tee shirts, plaques, paperweights, and rugs.

(6) Process and procedures used by the Chicago Tribune to select the front page of the June 15, 1998 edition of its newspaper for reproduction on products, such as tee shirts, plaques, paperweights, and rugs.

(7) Process and procedure used by the Chicago Tribune to permit others to reproduce or replicate portions or headlines of its newspapers on

products, such as tee shirts.

(8) The decision by the Chicago Tribune to permit Front Page News, Inc[.] to produce the tee shirt shown in Exhibit 7 of the Complaint in this action.

(9) The circumstances and facts relating to a "computer system crash" identified in Defendant Chicago Tribune Company's Response to Plaintiff's First Request for Production of Documents, Response to Request Number 23, including a description of certain documents that may have been responsive to the document request.

/5 The court also denied Ms. Packman's motion to strike certain exhibits in defendants' motion for summary judgment, a ruling she does not contest on appeal.

/6 Ms. Packman does not contest this ruling on appeal, and, in any event, the district court's decision was entirely proper. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966); Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc., 781 F.2d 604, 611 (7th Cir. 1986).

/7 The defendants do not raise on appeal their First Amendment defense to Ms. Packman's claims.

/8 Proof of these two elements is required for both federal claims in this case: trademark infringement, 15 U.S.C. sec. 1114, and unfair competition, 15 U.S.C. sec. 1125(a). See Smith Fiberglass Prod., Inc. v. Ameron, Inc., 7 F.3d 1327, 1329 (7th Cir. 1993).