UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 1, 2006[*]
Decided February 6, 2006

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

No. 05-3824

LARRY R. HOLMAN,
    *Plaintiff-Appellant,*

    *v.*

ELSA HORN, ROMAN KAPLAN,
JAMES GREER, et al.,
    *Defendants-Appellees.*

Appeal from the United States
District Court for the Eastern
District of Wisconsin.

Nos. 04 C 792 & 05 C 9

William C. Griesbach,
*Judge.*

**O R D E R**

In these consolidated cases under 42 U.S.C. § 1983 and Wisconsin state law, inmate Larry Holman claimed that he had been denied proper medical care while housed at Kettle Morraine and Oshkosh Correctional Institutions ("KMCI" and "OCI"). Specifically, Holman claimed that prison physicians violated the Eighth Amendment and state law when they ignored gastrointestinal bleeding caused by prescribed medicines. He also claimed that he had been denied treatment for Hepatitis C in violation of the Eighth Amendment and the Equal Protection Clause.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

The district court granted summary judgment for the defendants.  For the reasons set forth in this order, we affirm the judgment of the district court.

The district court accepted the following facts from the defendants' proposed factual findings because Holman had failed to conform his fact statements to Local Rule 56.2.  Holman suffers from Hepatitis C, peptic ulcers, and asthma.  A year after he arrived at KMCI, his ulcers caused gastrointestinal bleeding that required hospitalization.  A hospital physician recommended that he stop taking theophylline, an asthma medication, "given its association with his upper GI bleed."  Dr. Horn, an internist and gastroenterologist at KMCI, immediately prescribed a different inhaler for Holman.

About a year later, Holman submitted a request for medical services; he complained of light red blood in his stool and expressed concern that his ulcers were again causing gastrointestinal bleeding.  Dr. Horn responded to the request, thought the cause of the bleeding might be hemorrhoids and instructed a nurse to examine Holman.  Dr. Horn determined that his ulcers could not have caused the bleeding because they would produce, not red, but black blood in the stool.  A month later Holman complained of an upset stomach that he feared was due to gastrointestinal bleeding, but a prison physician examined him and found nothing unusual.

A short time later, Holman was transferred to OCI.  During the 17 months of his confinement there, he was seen by medical staff more than 60 times.  Medical staff also arranged for the evaluation of his hepatitis C condition at the University of Wisconsin Hospital.  X-rays taken at the hospital revealed that Holman had lesions on his liver, which Dr. Horn believed to be consistent with his history of alcohol and drug abuse while suffering from hepatitis C.  Deanna Nakada, a physicians assistant at the hospital, recommended a liver biopsy to assess the severity of the lesions.  OCI doctors approved the procedure, which revealed minimal inflation and "stage 0 fibrosis"--a rating that indicates a complete absence of liver scarring.  Nakada recommended against hepatitis C treatment because, for patients whose biopsies reveal fibrosis less advanced than stage 2, she considered the potential benefits outweighed by the high cost and toxic side-effects which are similar to those from chemotherapy.  The Wisconsin Department of Corrections ("WDOC") guidelines likewise provide for hepatitis C treatment only for patients with fibrosis of stage-2 or greater.  In accordance with DOC's guidelines, Holman's request for some form of hepatitis C treatment was denied by OCI's medical director.

Holman then sued Dr. Horn, Nakada, the OCI physicians, nurses, and administrators.  Alleging violations of the Eighth Amendment and state malpractice law, he claimed that these individuals had ignored the gastrointestinal bleeding caused by medications which they had prescribed.  He also claimed that the

defendants' refusal to treat his hepatitis C condition constituted deliberate indifference and denied him equal protection because white inmates with comparably advanced hepatitis C had received treatment, while he, a black inmate, had not.

The court granted summary judgment for the defendants. It determined that Holman lacked any evidence that the defendants were deliberately indifferent to his medical needs. The court acknowledged that Holman had serious health problems, but these ailments resulted from his preexisting physical condition rather than from the defendants' treatment. Indeed, the court observed that the record reflected "great solicitude" for Holman's needs on the part of the defendants. As for Holman's equal protection claim, the court stated that "[n]ot one shred of evidence suggested that race played any role in Holman's treatment." Finally, the court concluded that Holman could not establish medical malpractice because he offered no medical expert's opinion, which is necessary in Wisconsin to establish the requisite standard of care.

On appeal, Holman first contends that the district court erred in granting summary judgment on his claim that the defendants were deliberately indifferent in prescribing medication that caused gastrointestinal bleeding. He submits that there was evidence that theophylline caused him gastrointestinal bleeding and should never have been prescribed. He points to the attending physician's note during his hospitalization. That note recommended that theophylline be discontinued "given its association with his upper GI bleed." Holman admits that he was immediately taken off theophylline, but believes that the note establishes that theophylline should never have been prescribed. However, even if, as Holman believes, this clinical note could establish that he should never have received theophylline due to the risk of gastrointestinal bleeding, he lacked any evidence that the defendants knew of an unacceptable risk and consciously disregarded it. *See Estate of Cole Pardue v. Fromm*, 94 F.3d 254, 259 (7th Cir. 1996) (deliberate indifference requires more than a showing of medical malpractice).

Second, Holman submits that summary judgment was improper on his claim that Dr. Horn was deliberately indifferent when she was told that his ulcers were bleeding again. Dr. Horn thought the bleeding was hemorrhoidal, given the color of the discharge, and accordingly ordered a nurse to examine him for hemorrhoids. Holman admits that Dr. Horn thought the bleeding was hemorrhoidal and thus cannot show that she acted with deliberate indifference. *See Gil v. Reed*, 381 F.3d 649, 661 (7th Cir. 2004).

Third, Holman contends that the court erred in granting summary judgment on his claim that Dr. Horn committed medical malpractice in prescribing theophylline. Pointing to a letter from Mary Powers, he disputes the court's finding

that he lacked a medical expert's opinion, as required in Wisconsin, *see Gil*, 381 F.3d at 659.  Powers identifies herself as "Poison Control Supervisor" for Children's Hospital of Wisconsin and states that long-term usage of Theophylline can cause the stomach lining to bleed.  Even if this letter qualified as expert testimony, it gives no opinion related to Dr. Horn's standard of care in prescribing theophylline for a patient in Holman's circumstances.  *See id.* at 659.

Finally, Holman generally contends that the court abused its discretion in denying his motion to serve the defendants with 25 additional interrogatories which, he believes, would have allowed him to establish his equal protection claim.  The district court denied the motion, finding the proposed questions unreasonably cumulative.  *See* Fed. R. Civ. P. 26(b)(2).  Holman does not dispute that determination.  Moreover, he has not shown actual prejudice from his inability to serve the additional questions.  *See Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001).

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED