NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 29, 2007[*]
Decided December 5, 2007

**Before**

Hon. JOEL M. FLAUM, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 07-1775

| | |
|---|---|
| DANIEL C. BURTON, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin |
| *v.* | No. 05-C-0367 |
| KIRSTEN RUZICKI, et al., *Defendants-Appellees.* | William E. Callahan, Jr., *Magistrate Judge.* |

**O R D E R**

Daniel Burton, a pretrial detainee in the Kenosha County Detention Center (KCDC), sued several correctional officers under 42 U.S.C. § 1983 alleging that they used excessive force against him, were deliberately indifferent to his medical needs, and provided inadequate conditions of confinement. A magistrate judge, sitting by consent, granted summary judgment for the defendants, finding that no genuine

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. Fed. R. App. P. 34(a)(2).

issue of material fact existed regarding the excessive force claim and that Burton had not exhausted his other two claims. We affirm.

Because Burton appeals from a grant of summary judgment, we construe the evidence and draw all reasonable inferences in his favor. *Sides v. City of Champaign*, 496 F.3d 820, 822 (7th Cir. 2007). Burton came to KCDC in October 2004 as a pretrial detainee who had been incarcerated for at least the last 13 years. He was a Level II inmate, the second-highest classification, because he posed potential escape and assault risks. In November 2004 he was disciplined after refusing to follow an officer's orders. All officers at KCDC knew Burton's classification and history of insubordination.

Burton's claims stem from an incident that occurred the morning of December 2, 2004. Officer Kirsten Ruzicki entered Burton's cell block to deliver breakfast to the inmates. The cell block has a small day room with a table and six cells lining one side of the room. When Ruzicki entered, Burton was talking loudly and using profanity. Ruzicki told Burton to stop using profanity, which Burton knew was prohibited. Burton responded by telling her to serve his food. She did so but told him to go to his cell for lockdown. Instead, Burton sat at the table and refused to go into his cell. After serving breakfast to the other inmates, Ruzicki again told Burton to go to his cell, but he refused, saying he would finish his breakfast first. Ruzicki then threatened to lock down the rest of the inmates and take him to the segregation unit. Burton still refused to go into his cell.

Officer Ruzicki ordered the other inmates into their cells and called for backup. Moments later, Officers Scott Eggers and Debbie Maddern arrived. Eggers ordered Burton to stand up, and Burton replied that he would get up when he was finished eating. At that point, Ruzicki "blanketed" Burton's arm by using her hands to form a cup around Burton's elbow to escort him to segregation. Burton pulled his arm away and stood up, leaning away from her. Eggers then moved toward Burton to try to gain control over him, and the two ended up with their arms locked falling to the floor. As they fell, Burton grabbed the cell bars to break his fall and Eggers's head hit the bars. As Burton tried to get up, Eggers grabbed his head to keep him on the ground. Burton heard Eggers tell Ruzicki to use pepper (OC) spray and saw her shake the bottle. Ruzicki deployed a one-second burst of OC spray, missing Burton, and then another one-second burst, this time hitting him in the eyes.

After restraining Burton, officers escorted him out of the day room. A sergeant began to treat Burton in the hallway and called 911 so that Burton could be taken to the hospital. Burton sustained a dislocated right shoulder and a left orbital contusion from the OC spray. Doctors prescribed pain medication, physical therapy, and eye ointment.

Upon returning from the hospital, Burton was placed in segregation and charged with three violations of KCDC rules. A hearing officer sustained the charges, and Burton received 30 days of disciplinary segregation, which was affirmed after Burton appealed. While in segregation, he filed at least five grievances asking for access to Wisconsin legal materials.

In March 2005 Burton sued under 42 U.S.C. § 1983, raising four claims: (1) the officers used excessive force; (2) jail nurses were deliberately indifferent to his medical needs; (3) jail officials provided inadequate conditions of confinement; and (4) jail officials denied him access to the courts. After screening the complaint, the district court dismissed the access-to-courts claim, finding that Burton did not allege prejudice, but allowed Burton to proceed on the remaining three claims. The judge then granted the defendants' motion for summary judgment on the excessive force claim, finding that Burton had not produced evidence suggesting that the officers acted other than in good faith. The judge also found that Burton had not exhausted his administrative remedies for the other two claims.

On appeal Burton challenges the grant of summary judgment as well as two earlier procedural rulings. We review the grant of summary judgment de novo. *Sides*, 496 F.3d at 826. Because Burton was a pretrial detainee, he had to bring his claims under the Fourteenth Amendment, which, in this context, we analyze using the same standards as we do for Eighth Amendment claims. *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000). The inquiry for a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see Fillmore v. Page*, 358 F.3d 496, 503 (7th Cir. 2004). Several factors contribute to this determination, including "the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that the force caused to an inmate." *Fillmore*, 358 F.3d at 504. To successfully oppose a motion for summary judgment, the inmate must have evidence that "will support a reliable inference of wantonness in the infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 322 (1986); *see also Fillmore*, 358 F.3d at 504.

The judge correctly granted summary judgment on Burton's claim that the officers used excessive force. Burton has not provided any evidence suggesting that the officers acted maliciously or sadistically. Rather, the record shows that they acted in good faith in responding to an inmate who refused to obey their orders. Burton does not dispute that he refused to follow Officer Ruzicki's order to eat breakfast in his cell three times before she escalated her discipline tactics. Faced with an insubordinate inmate whom she knew posed an escape and assault risk and had caused other disturbances recently, Ruzicki followed jail policy by calling for backup, using verbal persuasion and then the "blanketing" technique, and

eventually using OC spray when it became apparent that they could not control Burton.  *See Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) ("The use of mace, tear gas or other chemical agent of the like nature when reasonably necessary . . . to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment.").

Officers Eggers and Maddern likewise followed protocol in subduing Burton, applying force in proportion to the threat they perceived.  Although Burton insists he did not hit or resist Ruzicki and Eggers, these disputed facts are immaterial because the officers were justified in escalating their discipline based on Burton's initial and continued disobedience.  *See id.* at 1267 (reasoning that if an inmate "cannot be persuaded to obey [an] order, some means must be used to compel compliance" because discipline in a correctional institution is "essential if the prison is to function"); *see also Bell v. Wolfish,* 441 U.S. 520, 547 (1979) (according "wide-ranging deference" to prison officials in adopting and executing discipline policies).

The judge also correctly granted summary judgment on Burton's claims of deliberate indifference and inadequate conditions of confinement because Burton failed to exhaust administrative remedies for these claims.  Prisoners are prohibited from bringing claims about prison conditions under § 1983 until "such administrative remedies as are available are exhausted," 42 U.S.C. § 1997e(a), and they must do so by following prison rules for the grievance process, *Woodford v. Ngo*, 126 S. Ct. 2378, 2382 (2006); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002).  We review a district court's exhaustion finding de novo.  *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006).

Burton did not file any grievances about the jail officials' deliberate indifference to his medical needs or the conditions in his cell.  Burton contends that his failure to do so should be excused because he was denied writing materials while in disciplinary segregation, but he filed at least five other, unrelated grievances during that same time period.  Even though we view the facts in the light most favorable to Burton, we will not make unreasonable inferences.  *See St. Louis N. Joint Venture v. P & L Enters., Inc.*, 116 F.3d 262, 265 n.2 (7th Cir. 1997).  Burton also argues, for the first time on appeal, that he could not file grievances because his injured arm prevented him from writing and because he did not know about the exhaustion requirement.  Burton forfeited these arguments because he did not raise them in the district court.  *See Omega Healthcare Investors, Inc. v. Res-Care, Inc.*, 475 F.3d 853, 858-59 (7th Cir. 2007).

Burton raises two other issues on appeal, neither of which are meritorious.  First, he argues that the district court erred in dismissing at the screening stage his claim that he was denied access to the courts.  We review dismissals for failure to state a claim under § 1915A de novo*, Westefer v. Snyder*, 422 F.3d 570, 574 (7th Cir. 2005), using the same standards that apply to dismissals under Federal Rule of

Civil Procedure 12(b)(6), *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000). Our notice-pleading system requires that complaints contain only a "short and plain statement of the claim," FED. R. CIV. P. 8(a)(2), but when inmates claim they have been denied access to the courts, they must specifically allege how the denial prejudiced them. *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006); *Ortloff v. United States*, 335 F.3d 652, 656 (7th Cir. 2003). Because Burton did not allege prejudice, the judge properly dismissed Burton's access-to-courts claim.

Finally, Burton argues that the district court improperly denied two motions seeking leave of court to depose inmates who witnessed the incident. We review discovery rulings for an abuse of discretion and will reverse only if the movant shows that "the denial of discovery resulted in actual and substantial prejudice" to him. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001). Burton sought the depositions to establish that he did not provoke the officers, that he was attacked by them, and that he did not fight back. Burton explained that he could not get affidavits from the inmates in lieu of depositions because he was no longer at the KCDC facility where the incident occurred and because two of the inmates were now in the custody of Immigration and Naturalization Services. The court, however, denied both motions, reasoning that Burton had not explained why he could not use written discovery to obtain names and locations of potential affiants.

The district court did not abuse its discretion in denying Burton's motions to depose various inmates. Burton has not shown, let alone argued, that he has suffered actual and substantial prejudice. The district court may limit discovery if the discovery sought is "obtainable from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C). We cannot say that the court abused its discretion in finding that Burton should have first attempted to obtain the information through affidavits and written discovery. Morever, Burton already had at his disposal statements by three of the inmates he sought to depose—statements that, in some instances, contradicted what Burton hoped these inmates would say in depositions.

AFFIRMED.