Richard COMPTON, Plaintiff,

v.

FIFTH AVENUE ASSOCIATION, INC.,
and the Shelter for Abused Women
of Collier County, Defendants.

FIFTH AVENUE ASSOCIATION, INC.,
and the Shelter for Abused Women
of Collier County, Plaintiffs,

v.

Richard COMPTON, Defendant.

Nos. 97–43–CIV–FTM–24(D),
97–44–CIV–FTM–23(D).

United States District Court,
M.D. Florida,
Fort Myers Division.

May 19, 1998.

---

### *ORDER*

BUCKLEW, District Judge.

THIS CAUSE comes before the Court on the Shelter for Abused Women of Collier County's Motion for Summary Judgment (Doc. No. 36, filed March 2, 1998) and Fifth Avenue Association's Motion for Summary Judgment (Doc. No. 40, filed March 6, 1998). Plaintiff/Counter-Defendant Richard Compton has responded in opposition (Doc. No. 51, filed April 3, 1998).

### I. BACKGROUND

Plaintiff/Counter–Defendant Richard Compton is a former member of the Board of Directors of the Defendant/Counter–Plaintiff Shelter for Abused Women of Collier County ("the Shelter") and former chairman of its fund-raising committee. (Herrmann Aff. ¶ 3.) In April of 1993, Compton and a friend, Janina Birtolo, were discussing the possibility of a non-profit, street-painting festival in Naples, Florida. (Compton Aff. Ex. A.; Compton Dep. at 40–48.) The two subsequently conceived of the name "Via Colori" for the event. (Compton Aff. Ex. A.) Whatever interest Ms. Birtolo possessed in "Via Colori" she later transferred to Compton. *Id.* On October 27, 1993, at Compton's suggestion, the Shelter's Board of Directors adopted the name "Via Colori" to designate its street-painting fund-raiser, which was to take place in May of 1994 in Naples. (Compton Dep. at 38, 40, 51.)

The first "Via Colori" festival took place in May of 1994. The second took place during April of 1995. The third "Via Colori" festival took place in April of 1996. During the 1994 and 1995, Compton was both a member of the Shelter's board and chair of its fund-raising committee. In 1996, he was no longer on the board but still chaired the Shelter's fund-raising committee. These festivals took place on Eighth Avenue in Naples. Each time, the festival was funded and staffed by the Shelter. (Hermann Dep. Ex. 26; Gill Dep. at 61–62.) All advertisements indicated that "Via Colori" was to benefit the Shelter. (Compton Dep. Exs. 7–12; Hermann Dep. Exs. 30, 35–37; Gill Dep. Exs. 1–6.) All proceeds went to the Shelter. (Compton Dep. at 206–07; Gill Dep. at 62.) Compton's "use" of "Via Colori" was limited to three letters "marketing" the "Via Colori" concept. (Compton Dep. at 90–91.)

In the Summer of 1995, Compton filed an application with the United States Patent and Trademark Office to register the mark "Via Colori." This application included an affidavit in which Compton swore that he knew of no other person, firm, corporation or association that possessed the right to use the mark. (Doc. No. 36 Ex. C.) In May of 1996, Compton advised Martha Gill, President of the Shelter, that he had registered "Via Colori" for use as a trademark under his own name. (Gill Dep. at 11–12, 47.)[1] Short-

---

1. Although the registration was not granted until July 2, 1996, Compton had been placing a "ᵀᴹ" next to "Via Colori" for over a year. (Compton Dep. at 100.)

ly thereafter, the Shelter sought to work out a joint-venture agreement with the Fifth Avenue Association. Because Compton had warned the Shelter that he would not allow "Via Colori" to be used in conjunction with an event on Fifth Avenue, the Shelter made plans to conduct the 1997 event on Fifth Avenue, as "the Festival of Colors."

Nonetheless, advertisements for the "Festival of Colors" explicitly invoked the prior "Via Colori" events. As a result, on December 31, 1996, Compton filed suit in Collier County Circuit Court. On February 3, 1997, the Shelter and Fifth Avenue removed the case to federal court. Simultaneously, the Shelter and Fifth Avenue filed an independent action against Compton in federal court seeking declaratory relief and cancellation of Compton's registration.[2] On April 18, 1997, Compton filed an amended complaint alleging trademark infringement; common-law unfair competition and violation of the section 43(a) of the Lanham Act. On April 18, 1997, the two cases were consolidated.

## II. DISCUSSION

Now the Shelter and Fifth Avenue have moved for summary judgment in their favor, both as to Compton's claims against them, and as to their own claims against Compton. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir.1989); *Samples on Behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB–TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir.1988). Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir.1988).

### A. *Compton's Claims Against the Shelter and Fifth Avenue*

When the party moving for the summary judgment does not bear the burden of persuasion on the issue at trial, the moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *See Celotex*, 477 U.S. at 325, 106

---

2. The issue of whether Fifth Avenue is an appropriate defendant in this case, or has standing to press its claims as plaintiff has been neglected by the Parties, who have treated Fifth Avenue's potential liability and its claims as identical to those

of the Shelter. This failure to address Fifth Avenue's distinct position as both Defendant and Plaintiff ultimately does not alter the Court's disposition of the motions at hand.

S.Ct. 2548. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. *Id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

### 1. Trademark Infringement

Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), governs lawsuits for the infringement of a federally registered trademark. A defendant is liable for infringement if, without consent of the registrant, he uses "in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark [that] . . . is likely to cause confusion, mistake, or to deceive." *Id.* To establish a claim of trademark infringement, the plaintiff—or senior user—must show: (1) that it owns a valid trademark; and (2) that the defendant's—or junior user's—use of the contested mark is likely to cause confusion. *See, e.g., Dieter v. B & H Indus.,* 880 F.2d 322, 326 (11th Cir.1989); *Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1512 (11th Cir. 1984).

 It is the first of these requirements—Compton's "ownership" of the "Via Colori" mark—that is at issue here. Ownership of a mark, both under the Lanham Act and at common law, is determined by use, and specifically priority (as well as continuity) of use. *See, e.g., Hydro–Dynamics, Inc. v. George Putnam & Co.,* 811 F.2d 1470 (Fed.Cir.1987) ("The common law and the Lanham Act require that trademark ownership be accorded to the first bona fide user."); 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 16:4 (4th ed. 1997) ("The cases are legion to the effect that for inherently distinctive marks, ownership is governed by priority of use."). This is because "[a] mark is merely a symbol of existing good will," McCarthy, *supra,* § 16:12; and without use, "there can be no good will and nothing yet created for the 'mark' to represent or symbolize." *Id.*

Thus, the fact that Compton first conceived of the mark "Via Colori" is irrelevant to his ownership of the mark. *See Hydro–Dynamics,* 811 F.2d at 1473 ("Mere invention, creation, or discussion of a trademark does not create priority rights."); McCarthy, *supra,* § 16:12 ("The mere fact that a party conceived the idea of a trademark and discussed it with others does not establish priority as of the date of those events.").[3] Likewise, registration of a mark, unaccompanied by prior use, does not create ownership. *See Hydro–Dynamics,* 811 F.2d at 1473 ("[T]rademark rights in the United States are acquired by adoption and use, not by registration."); McCarthy, *supra,* § 19:3 ("[T]he registration does not create the trademark. . . . It is the use of the mark to identify a single source which creates exclusive trademark rights.").

In this instance, it is undisputed that the first and only entity to use the mark "Via Colori" was and is the Shelter. Minutes from the Shelter's board meeting in October of 1994 reflect that, even at that early date, "Via Colori was successfully established as our signature event." (Compton Dep. Ex. 6.) A spokesperson for the Shelter has stated, "We used ['Via Colori'] so broadly in so may different venues that I believed the community understood it was our event." (Hermann Dep. at 69.) Compton himself has admitted that the only "Via Colori" events conducted prior to the onset of this action[4]

---

**3.** Compton has evinced a dogged misunderstanding of this fundamental tenet of trademark law. For instance, responding to the question of how he is sure he owns "Via Colori," Compton answered simply, "I created it." (Compton Dep. at 118.) This misunderstanding may reflect a confusion between the intellectual property at stake in this case—a trademark—and a copyright, whose ownership does indeed hinge on authorship (rather than use). Indeed, both Compton's Counsel and Compton himself have repeatedly mischaracterized the case as a copyright case.

The former informed the Magistrate Judge that "the case is a copyright case and a counterclaim for cancellation of a registration of copyright." (Doc. No. 29 at 3.) The latter testified, "I sued the Shelter for Abused Women and Fifth Avenue Merchants Association because they had infringed upon my copyright. . . ." (Compton Dep. at 102.)

**4.** In May of 1997, a "Via Colori" event was held with Compton's possession in Seaside, Florida. (Compton Dep. at 93.)

"were intended as fund-raisers for the Shelter," *id.* at 55, and that their goal was to associate "Via Colori" with the Shelter in the minds of the public. *Id.* at 67. Thus, there is no genuine issue of material fact as to the lack of prior use of the mark "Via Colori" by Compton. And consequently, there is no genuine issue of material fact as to his lack of ownership. Because ownership of the mark in question is a necessary element of an infringement claim, summary judgment must be entered in the Shelter's (and Fifth Avenue's) favor with regards to Compton's trademark infringement claim.

### 2. False Advertising

■ Plaintiff has also brought a claim under section 43(a) of the Lanham Act for false designation of ownership. Such a claim is essentially the same as one for infringement of a trademark (whether registered or not), tradename, or trade dress. Because the Court has concluded that the Shelter did not err in asserting its ownership of "Via Colori," the Court also concludes that Plaintiff cannot, as a matter of law, bring a claim for false designation of ownership against it.

### 3. Common–Law Unfair Competition

■ Under Florida common law, "the universal rule governing tradename protection is that protection will be extended to the first appropriator of a name, within the territorial scope of its business, against subsequent use of the same of a similar name by another." *Junior Food Stores of W. Fl., Inc. v. Jr. Food Stores,* 226 So.2d 393, 396 (Fla. 1969) (citing *Florida Ventilated Awning Co. v. Dickson,* 67 So.2d 215 (Fla.1953)); *see also American Bank of Merritt Island v. First Am. Bank & Trust,* 455 So.2d 443, 445 (Fla. Ct.App.1984) (holding that unfair competition claim based on tradename or trademark infringement requires, inter alia, showing of priority of use). Because a common-law unfair competition claim premised on trademark infringement also requires the Plaintiff to prove priority of use, Compton's unfair competition claim must also fail as a matter of law. *See Babbit Elec., Inc. v. Dynascan Corp.,* 38 F.3d 1161, 1181 (11th Cir.1994) (concluding that trademark infringement is-

sue was dispositive as to Florida unfair competition claim based on same facts).

### B. The Claims Against Compton

When the party moving for the summary judgment bears the burden of persuasion on the issue at trial, its showing must sustain the burden as well as demonstrate the absence of a genuine dispute. *See Celotex,* 477 U.S. at 331–32, 106 S.Ct. 2548. Therefore, the moving party must satisfy both the initial burden of production on the summary judgment motion, by showing that no genuine dispute exists as to any material fact, and the ultimate burden of persuasion on the claim, by showing that it would be entitled to a directed verdict at trial.

### 1. Trademark Cancellation

■ The Lanham Act allows for cancellation of Principal Register registrations, by one who "believes that he is or will be damaged by the registration,' and for cancellation of Supplemental Register registrations on the same ground." 15 U.S.C. §§ 1064, 1092. "[C]ancellation procedure is the 'second backstop' along with opposition proceedings, to the ex parte examination of a mark by the Trademark Examiner." McCarthy, *supra,* § 20:40. To prosecute a petition for cancellation successfully, a petitioner must plead and prove two basic elements: (1) that it has standing to petition to cancel in that it is likely to be damaged by the registration; and (2) that there are valid grounds why the registration should not continue to be registered. *See, e.g., Coach House Restaurant v. Coach & Six Restaurants,* 934 F.2d 1551, 1557 (11th Cir.1991); McCarthy, *supra,* § 20:41.

■ The standing hurdle is easily met here. The purpose of standing is simply to weed out "intermeddlers" from those with "a personal interest in the outcome beyond that of the general public." *Lipton Indus., Inc. v. Ralston Purina Co.,* 670 F.2d 1024, 213 U.S.P.Q. 185, 188 (C.C.P.A.1982). The *Lipton* court gave, as an example of such a personal interest, the assertion of a likelihood of confusion "which is not wholly without merit." *Id.* [5] In this instance, were Compton

---

5. The Federal Circuit has adopted the *Lipton* standing rule. *See International Order of Job's* *Daughters v. Lindeburg Co.,* 727 F.2d 1087 (Fed. Cir.1984).

and the Shelter both to use the "Via Colori" mark in the Naples area, then the public would inevitably suffer confusion.

Under section 2 of the Lanham Act, prior use of a confusingly similar mark by the petitioner is grounds for cancellation of the registrant's mark. McCarthy, *supra*, § 20:53. Even where the petitioner has not demonstrated its own prior use, "[i]n a petition to cancel a registration less than five years old, the allegation of non-use in commerce is a proper ground [for cancellation]." McCarthy, *supra*, § 20:54. Thus, the grounds for cancellation here are the same as those that fatally undermined Compton's infringement claim: i.e., Compton's failure to use, and the Shelter's prior use, of "Via Colori."

 As a defense to the cancellation claim, Compton urges that the Shelter is "estopped" from asserting an interest in the "Via Colori" mark because it knew of his efforts to register the mark but did nothing to oppose the registration. There is no defense of estoppel, as such, to a cancellation claim. *See* McCarthy, *supra*, § 20:79. The registrant may bring a laches defense, though, if he demonstrates: (1) a delay by the petitioner in asserting a right or claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted. *See AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1545 (11th Cir.1986). The "delay" here, however, was minimal. The Shelter brought its cancellation claim six months after Compton's registration of the "Via Colori" mark. This Circuit has held that a two-year span is insufficient delay to form the basis of a laches defense to cancellation. *See AmBrit*, 812 F.2d at 1546 ("[Defendant] has cited no case in which a delay of less than two years was found to constitute laches.").

The Court concludes, therefore, that the moving party has satisfied both its initial burden of production as to the cancellation claim, by showing that no genuine dispute exists as to any material fact, and the ultimate burden of persuasion on the claim, by showing that it would be entitled to a directed verdict at trial.

2. Breach of Fiduciary Duty

 The Shelter has also brought a claim against Compton for breach of fiduciary duty. A fiduciary owes to its beneficiary the duty to refrain from self-dealing, a duty of loyalty, a duty to disclose material facts, and an overall duty to refrain from taking advantage. *See Capital Bank v. MVB, Inc.*, 644 So.2d 515 (Fla.Ct.App.1994). There is evidence that, as a member of the Shelter's board, Compton was under a fiduciary duty toward the Shelter. There is also evidence that Compton may have breached this duty by applying to register and then registering "Via Colori" in his own name, thereby taking advantage and ostensibly self-dealing. Nonetheless, the Shelter's and Fifth Avenue's argument on this point is so cursory and bare of citation or explanation that the Court is reluctant to form a conclusion. Given this paucity of argument and authority, the Court chooses to exercise its discretion to dismiss this surviving pendent state law claim. *See, e.g., United Mine Workers of America v. Gibbs*, 383 U.S. 715, 727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("[I]f the federal claims are dismissed before trial .... the state claims should be dismissed as well."). *See also Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 349–50, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (reaffirming authority of district courts to refuse to hear pendent state claims when federal claim has been disposed of prior to trial).

Accordingly, it is **ORDERED AND ADJUDGED** that the Shelter for Abused Women of Collier County's Motion for Summary Judgment (Doc. No. 36) and Fifth Avenue Association's Motion for Summary Judgment (Doc. No. 40) are **GRANTED IN PART** insofar as:

(1) summary judgment is entered in favor of the Shelter for Abused Women of Collier County and Fifth Avenue Association on Plaintiff Richard Compton's claims for trademark infringement, common-law unfair competition, and violation of the section 43(a) of the Lanham Act;

(2) summary judgment is also entered in favor of the Shelter for Abused Women of Collier County and Fifth Avenue Association on their claim for cancellation July 2, 1996

registration of the trademark "Via Colori" under the name of Richard Compton;

(3) the pendent claim for breach of fiduciary duty brought by the Shelter for Abused Women of Collier County and Fifth Avenue Association is DISMISSED WITHOUT PREJUDICE;

(4) all other pending motions are DENIED AS MOOT; and

(5) the Court Clerk is directed to close this case.