**SOUTHEAST CLINICAL NUTRITION CENTERS, INC., a Georgia corporation, Plaintiff,**

v.

**MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH, a Minnesota corporation, Defendant.**

Civil Action No. 1:13–CV–00626–AT.

United States District Court, N.D. Georgia, Atlanta Division.

Signed Oct. 29, 2013.

Sanford Jay Asman, Office of Sanford J. Asman, Atlanta, GA, for Plaintiff.

J. Thomas Vitt, Kristin K. Zinsmaster, Mark D. Wagner, Dorsey & Whitney, Minneapolis, MN, Christopher Prine Bussert, James White Faris, VI, Kilpatrick Town-

send & Stockton, LLP, Atlanta, GA, for Defendant.

## *ORDER*

AMY TOTENBERG, District Judge.

This matter is before the Court on Defendant Mayo Foundation for Medical Education and Research's ("Mayo") Amended Motion to Dismiss Plaintiff Southeast Clinical Nutrition Centers, Inc.'s Complaint. [Doc. 23].[1] Plaintiff operates a clinical nutrition center that provides educational and consulting services in clinical nutrition, health, and lifestyle wellness education to patients. In connection with these services, Plaintiff owns two federally registered trademarks in the word marks (1) "Don't diet. Lose IT!", U.S. Trademark Registration No. 3,993,945 (the "'945 Registration"), and (2) "Don't diet. Live IT!", U.S. Trademark Registration No. 3,993,-944 (the "'944 Registration").

Plaintiff alleges that Defendant, a medical institution and publisher of diet books, infringes its marks with the use of the phrases "Lose IT" and "Live IT" in two of its publications: *The Mayo Clinic Diet* (*"Mayo Diet Book"*) and its companion journal *The Mayo Clinic Diet Journal* (*"Mayo Diet Journal"*). For the reasons set forth below, the Court **GRANTS** Defendants' Amended Motion to Dismiss.

### I. LEGAL STANDARD

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1216 (3d ed.2002); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d

---

1. The Court **DENIES AS MOOT** Defendant's First Motion to Dismiss [Doc. 16].

868 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir.1993). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). In making this assessment of plausibility on a case specific basis, the Court also uses its own judicial experience and common sense. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

## II. CONSIDERATION OF MATERIAL BEYOND THE COMPLAINT

As an initial matter, the Court finds it appropriate to consider certain material beyond the Complaint in analyzing Defendant's Motion to Dismiss. Generally on a motion to dismiss, if the Court goes beyond the pleadings, the Court must convert the motion into a motion for summary judgment pursuant to Rule 12(c). *See, e.g., Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir.2002). Here, however, the Court

may consider some material beyond the Complaint without converting the motion.

■ First, the Court may consider page excerpts of the *Mayo Diet Book* and the *Mayo Diet Journal* attached to Defendant's motion as Exhibits 1 through 4. The Court may consider a document or exhibit attached to the motion to dismiss without converting the motion into one for summary judgment if (1) the attached document or exhibit is central to the plaintiff's claim and (2) its authenticity is undisputed. *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364 (11th Cir. 1997). Here, the *Mayo Diet Book* and the *Mayo Diet Journals* are the allegedly infringing material and are thus central to Plaintiff's claims. Defendant attaches copies of these books to its Motion to Dismiss, and Plaintiff does not challenge the authenticity of these documents.[2] In fact, Plaintiff itself attaches to its Complaint excerpts from the *Mayo Diet Book.* (*See, e.g.,* Compl. Exs. 6–9; Docs. 1–6, 1–7.) Accordingly, the Court may consider these documents in assessing Defendant's Motion to Dismiss.

■ The Court may also consider the publication date of these books. Plaintiff argues that Defendant Mayo "failed to provide any competent testimony as to those dates" and thus cannot rely on these publication dates. (Pl.'s Resp. Opp'n Mot. Dismiss at 4, Doc. 24.) This is incorrect. The Court "may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment." *Horne v. Potter*, 392 Fed.Appx. 800, 802 (11th Cir.2010) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir.1999)). Facts that are "not subject to reasonable dispute" may be judicial-

---

2. Plaintiff challenges Defendant's reliance on Kristin Zinsmaster's statements made in a sworn declaration attached to copies of these books. (Pl.'s Resp. Opp'n Mot. Dismiss at 3–

4, Doc. 24.) Plaintiff does not, however, challenge the authenticity of the copies of these books themselves. The Court disregards Ms. Zinsmaster's affidavit.

ly noticed. Fed.R.Evid. 201(b). Such facts include those that "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.; see also Mullinax v. United Marketing Group, LLC,* No. 1:10–CV–03585–JEC, 2011 WL 4085933, at *6 (N.D.Ga. Sept. 13, 2011). Courts can therefore take judicial notice of a publication date. *See United States v. Davis,* No. 3:06–cr–020, 2012 WL 1313498, at *6 n. 4 (M.D.Pa. Apr. 17, 2012) ("The Court ... takes judicial notice of the full and accurate date of publication (June 5, 2010) from the Scranton–Times–Tribune as a fact that 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" (quoting Fed.R.Evid. 201)). Thus, the Court takes judicial notice of the 2010 publication date of these Mayo publications.

█ The Court may also take judicial notice of matters of public record. *Universal Express, Inc. v. U.S. Sec. & Exch. Comm'n,* 177 Fed.Appx. 52, 53 (11th Cir. 2006) ("Public records are among the permissible facts that a district court may consider."). The United States Copyright Office provides publicly available information regarding copyrighted material. (*See* U.S. Copyright Office, www.copyright.gov (last visited Sept. 16, 2013).) The Court takes judicial notice that, according to these public records, the *Mayo Diet Book* was first published on December 1, 2009. (*Id.* (follow link for "Search copyright information" then "Search the catalog" and search for registration number "TX0007217492"); *see also* Mot. Dismiss Ex. 5.)

Finally, the Court can rely on newspaper articles or periodicals to take judicial notice of the time when the Mayo books were commercially available. *See Lil' Joe Wein Music, Inc. v. Jackson,* 245 Fed. Appx. 873, 879 (11th Cir.2007) ("[T]he Court takes judicial notice, on the basis of several newspaper articles discussing the film, that Who's the Man? received wide commercial distribution."). Defendant directs the Court to the New York Times Best Sellers List which identifies the *Mayo Diet Book* as the number one best seller in the "Advice, How–To and Miscellaneous" category (January 24, 2010). (*See* Mot. Dismiss Ex. 8.) The Court takes judicial notice that at least by January 24, 2010, the *Mayo Diet Book* was commercially available. Armed with the facts described above, the allegations in the Complaint, and material attached thereto, the Court provides the following factual background.

### III. FACTUAL BACKGROUND

Defendant first published the *Mayo Diet Book* in December 2009. (*See* U.S. Copyright Office, www.copyright.gov (follow link for "Search copyright information" then "Search the catalog" and search for registration number "TX0007217492"); *see also* Mot. Dismiss Ex. 5.) According to Defendant, it published this book because "people [were] hungry for a diet based on Mayo's research and clinical experience." (Compl. Ex. 7.) Subsequently, in 2010, Defendant published *The Mayo Clinic Diabetes Diet* ("Mayo Diabetes Diet Book") and its companion journal *The Mayo Clinic Diabetes Diet Journal* ("Mayo Diabetes Diet Journal") "to help [readers] not only lose weight and improve [readers'] blood sugar, but do so safely." (Compl. Ex. 11).

Defendant uses the phrases "Lose It!" and "Live It!" to name two different subparts in each of these publications. (Mot. Dismiss Exs. 1–4.) According to the *Mayo Diet Book,* the "Lose It!" subpart is designed to "[jump-start] [the reader's] weight loss ... to help [the reader] lose 6 to 10 pounds in a safe and healthy way."

(Mot. Dismiss Ex. 1 at 10.) The "Live It!" subpart is "designed to help [the reader] continue to lose 1 to 2 pounds a week ... and then maintain that weight." (*Id.*)

According to Plaintiff, Defendant's use of the terms "Lose It!" and "Live It!" infringe its trademarks. Plaintiff does not directly allege when Plaintiff first began using the marks at issue, or that it began using the marks before the publication of the Mayo books. However, the trademark registration certificates attached to Plaintiff's Complaint provide insight. The certificates identify the date of first use of the marks in commerce, the application filing date, and the trademark registration date. According to the '945 registration, Plaintiff first used the "Don't diet. Lose IT!" mark in commerce several months after the publication of the *Mayo Diet Book*, on August 31, 2010. (Compl. Ex. 5.) Plaintiff filed its trademark application that same day. (*Id.*) The trademark registration issued to Plaintiff on July 12, 2011. (*Id.*)

The '944 Registration certificate for the "Don't diet. Live IT!" mark states that Plaintiff first used the mark in commerce much earlier, on July 31, 2007. (Compl. Ex. 4.) The registration certificate shows, however, that Plaintiff did not file its application for the Mark until December 20, 2010. (*Id.*) The trademark registration for this Mark issued to Plaintiff on July 12, 2011. (*Id.*)

Plaintiff does not allege that its trademarks are or have ever been particularly famous.

## IV. ANALYSIS

A trademark is "any word, name, symbol, or device, or any combination thereof [used] to identify and distinguish [one's] goods ... from those manufactured or sold

by others and to indicate the source of the goods." 15 U.S.C. § 1127. "Trademarks are not merely descriptive; they answer the question 'Who made it?' rather than 'What is it?'" *Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1216–17 (11th Cir. 2000) (citing 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 3:6 (4th ed.2000)).

Both state and federal law protect the first user of a distinctive mark against another's use of a confusingly similar mark in commerce. Plaintiff brings a common law claim of trademark infringement in Count 5, and federal claims of trademark infringement in Counts 1 through 4. The Court begins its analysis with the threshold element of any trademark infringement claim: priority of use. *See Popular Bank of Florida v. Banco Popular de Puerto Rico,* 9 F.Supp.2d 1347, 1353 (S.D.Fla. 1998) (noting that "[p]riority of use ... is a critical threshold issue" that must be addressed before considering other elements of trademark infringement). As explained below, the Court finds that Plaintiff's failure to allege priority of use for any of its marks warrants dismissal of all its claims. The Court then considers whether Plaintiff is entitled to amend its complaint or whether amendment would be futile in light of Defendant's fair use defense.

### A. Priority of Use

 To assert either a common law[3] or federal statutory trademark infringement claim, a plaintiff must as a threshold matter allege that its "use of the mark ... predate[s] the defendant's potentially confusing mark." *Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1216–17 (11th Cir.

---

**3.** The Eleventh Circuit noted that "a trademark infringement claim under Georgia law is reviewed under the same standards as a claim under the Lanham Act." *Optimum*

*Technologies, Inc. v. Home Depot U.S.A., Inc.,* 217 Fed.Appx. 899, 902 n. 4 (11th Cir.2007) (citing *Univ. of Ga. Athletic Ass'n v. Laite,* 756 F.2d 1535, 1539 n. 11 (11th Cir.1985)).

2000) (considering a claim under 15 U.S.C. § 1125(a) for infringing an unregistered trademark) (citing *Tally–Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1022 (11th Cir.1990) (per curiam)); *accord Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir.1999) (evaluating a claim of registered trademark infringement under 15 U.S.C. § 1114(1));[4] *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir.1997) (finding that appellants might satisfy the priority requirement because appellants' federal registration of the mark was prior to appellees' first use of the mark); *Tally–Ho*, 889 F.2d at 1022–23 ("Under the common law, trademark rights are appropriated only through actual prior use in commerce.") (evaluating common law trademark infringement); *Thoroughbred Legends, LLC v. The Walt Disney Co.*, No. 1:07–cv–1275–BBM, 2008 WL 616253 (N.D.Ga. Feb. 12, 2008); Am.Jur. Proof of Facts 3d 623 § 7 *Common–Law Trademarks or Trade–Name Rights in Geographical Areas of Prior Use* (2013).

In *Thoroughbred Legends*, for example, the court considered a motion for summary judgment converted from a motion to dismiss and dismissed the plaintiffs' trademark infringement claims, in part, because the plaintiffs failed to allege priority. *Thoroughbred Legends*, 2008 WL 616253, at *9. According to the plaintiffs' timeline, the defendants used the allegedly infringing mark, "Ruffian" in commerce in 2004. *Id.* The plaintiffs' first use of "RUFFIAN," however, was not until October 2006. *Id.* Among other reasons, the court dismissed plaintiffs' claims because the plaintiffs' use of the mark did not predate the defendants'. *Id.*

Here, Plaintiff does not allege in its Complaint when it first began using its registered marks "Don't diet. Lose IT!" or "Don't diet Live IT!". However, Plaintiff attaches to its Complaint the trademark registration for both the '945 ("Don't diet. Lose IT!") and '944 ("Don't diet. Live IT!") marks. The filing of a federal trademark application "shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect ... against any other person except for a person whose mark has not been abandoned and who, prior to such filing ... has used the mark." 15 U.S.C. § 1057(c) (emphasis added); *accord Tana v. Dantanna's*, 611 F.3d 767, 780 (11th Cir.2010) ("The owner of a registered mark ... enjoys the unlimited right to use the mark nationwide, and federal registration affords the registrant priority over all *future* users of confusingly similar marks." (emphasis added)); *see also* 1 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition, § 16:19 (4th ed. 2013) ("The registration, per se, is proof of use only as of its filing date, not the date of first use claimed in a[n] ... application."). Plaintiff filed its trademark application for the '944 mark on December 20, 2010, (Compl. Ex. 4), and its application for the '945 mark on August 31, 2010 (Compl. Ex. 5). These filing dates are after Mayo's use of the allegedly infringing terms in books published in December 2009. (*See* Mot. Dismiss Exs. 1–5; U.S. Copyright Office, www.copyright.gov (follow link for "Search copyright information" then "Search the catalog" and search for registration number TX0007217492) (last visited Sept. 16, 2013).) Thus, Plaintiff fails to allege that its use of the registered trademark predates Defendant's. Accordingly, Plaintiff's claims based on Defendant's alleged infringement of its

---

4. "[R]egistration of a mark, unaccompanied by prior use, does not create ownership." *Compton v. Fifth Ave. Ass'n, Inc.*, 7 F.Supp.2d 1328, 1331 (M.D.Fla.1998) (citing *Hydro–Dynamics, Inc. v. George Putnam & Co.*, 811 F.2d 1470, 1473 (Fed.Cir.1987)).

registered trademark (Counts 1–2) must be dismissed.

■ Plaintiff may nonetheless proceed on claims under 15 U.S.C. § 1125 or common law based on alleged infringement of its unregistered marks "Lose IT!" and "Live IT!", (see Counts 3–5), but again, Plaintiff must allege priority of use to sustain these claims.[5] Under common law or § 1125, trademark ownership rights are "appropriated only through actual prior use in commerce." *Tally–Ho,* 889 F.2d at 1022. "The first to use a mark on a product or service in a particular geographic market, the senior user, acquires rights in the mark *in that market.*" *Id.* at 1023 (emphasis added). Thus, "[a] senior user's rights also are geographically limited to only those territories in which it actually uses its mark or into which it might naturally expand (the 'zone of natural expansion).'" *Id.; Tana,* 611 F.3d at 773, 781 ("Geographic considerations are ... particularly relevant where a plaintiff holds only common-law trademark rights in a mark because it is well-established that the scope of protection accorded his mark is coextensive only with the territory

throughout which it is known and from which it has drawn its trade.").

■ Again, Plaintiff fails to allege its date of first use of any of its marks in its Complaint. However, according to Plaintiff's trademark application, Plaintiff first used the '945 mark, which includes the term "Lose IT!", in August 2010, after Defendant's use of the allegedly infringing mark. (Compl. Ex. 5.) Plaintiff makes no other allegations regarding the date of its first use of the '945 mark or the shortened phrase, "Lose IT!".[6] Accordingly, Plaintiff's claims based on the allegedly infringing use of the term "Lose IT" must be dismissed.

On the other hand, Plaintiff's trademark application for the '944 mark—which contains the phrase "Live IT"—states that its first use of that mark was in July 2007, *before* Defendant's use of the allegedly infringing mark. (Compl. Ex. 4.) Plaintiff does not, however, allege the geographic area in which it actually used the mark or used the shortened phrase, "Live IT!". And Plaintiff makes no attempt to remedy this failure in its response to Defendant's Motion to Dismiss by, for example, sug-

---

5. "[T]he use of another's unregistered, i.e., common law, trademark can constitute a violation of [15 U.S.C. § 1125]." *Tana,* 611 F.3d at 773 (quoting *Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1512–13 (11th Cir.1984)) (internal quotation marks and citations omitted). Whether Plaintiff designates its claim as a violation of § 1125 or a violation of common law, it must allege priority to survive Defendant's Motion to Dismiss. Plaintiff does not pursue a common law claim based on the entire phrase in its registered trademark, but rather only alleges a common law claim based on the shortened phrases "Lose IT!" and "Live IT!". (*See* Compl. Counts 3–5.)

6. In its Response to Defendant's Amended Motion to Dismiss, Plaintiff points out that, on a U.S. trademark application form, an applicant is not required to provide the earliest date when mark was used. (Pl.'s Resp. Opp'n

Mot. Dismiss at 6.) The applicant needs only allege, rather, that the mark was used at least as early as the date provided in the application. (*Id.*) In general, plaintiffs are not bound by the date they select as the first use of the mark in commerce. *Harod v. Sage Products, Inc.,* 188 F.Supp.2d 1369, 1377 (S.D.Ga.2002) (citing *Elder Mfg. Co. v. Int'l Shoe Co.,* 39 C.C.P.A. 817, 194 F.2d 114, 118 (Cust. & Pat.App.1952)). The purpose of the "at least as early as" language on the application, however, is to allow an investigation of the date of first use "before the application is filed or the claim made, not sometime later when the application or registration is involved in litigation." *McCarthy* at § 19:52. Even so, Plaintiff still does not offer in its Complaint or Response to Defendant's Motion to Dismiss an earlier date on which it first used the '945 "Don't diet. Lose IT!" mark for purposes of alleging priority.

gesting how it would amend its Complaint to allege the geographic area of use. Accordingly, Plaintiff also fails to state a trademark infringement claim based on the use of the unregistered phrase "Live IT.".

 Based on Plaintiff's allegations in its Complaint and response to Defendant's Motion to Dismiss, Plaintiff does not appear to be pursuing any other viable claim.[7] Plaintiff has not moved the Court to amend its complaint. Nor has Plaintiff suggested in any manner how it might amend its Complaint to allege priority. Generally, the court will not grant a plaintiff, represented by counsel, an opportunity to file an amended complaint if the plaintiff fails to indicate how the complaint could be amended to save the meritless claims. *See Long v. Satz*, 181 F.3d 1275 (11th Cir.1999) (holding that a litigant who seeks to amend a pleading must either attach a copy of the proposed amendment to a sufficiently supported motion to amend or set forth the substance of the

proposed amendment). Moreover, as explained next, even if the Court allowed Plaintiff an opportunity to replead, Plaintiff's allegations and the documents to which Plaintiff and Defendant refer suggest that, after discovery, Defendant will likely be entitled to the affirmative "fair use" defense.

## B. Fair Use

Even if Plaintiff were able to amend its Complaint to allege priority as to any of its claims,[8] Plaintiff will ultimately face Defendant's affirmative "fair use" defense, and as currently pled, Plaintiff's Complaint suggests that Defendant's alleged use of "Lose It!" and "Live It!" constitutes a non-infringing, non-trademark, fair use.

 Fair use is an affirmative defense.[9] A defendant who is sued for trademark infringement may assert a fair use defense, that his use is one that is "otherwise than as a mark ... or of a term ... which is descriptive of and used fairly and

---

7. Plaintiff's anti-dilution claim, to the extent it is pursuing one, is unsupported by the factual allegations. "To prevail on a federal dilution claim, the plaintiff must demonstrate that: (1) the plaintiff's mark is famous; (2) the defendant used the plaintiff's mark after the plaintiff's mark became famous; (3) the defendant's use was commercial and in commerce; and (4) the defendant's use of the plaintiff's mark has likely caused dilution." *Rain Bird Corp. v. Taylor*, 665 F.Supp.2d 1258, 1266–67 (N.D.Fla.2009) (citing 15 U.S.C. § 1125(c)). Plaintiff does not allege that its mark is "famous" or distinctive or that the defendant began using the mark after the mark became famous. Moreover, Plaintiff does not respond to Defendant's motion to the extent it seeks dismissal of its dilution claim, and thus Defendant's motion is deemed unopposed as to this claim. *See* L.R. 7.1B, NDGa. The Court is unable to discern any other cognizable claim for relief based on Plaintiff's allegations.

8. The Court does not consider whether Plaintiff has adequately pled ownership of the

rights to the shortened phrases "Lose IT!" or "Live IT!".

9. To be clear, the Court does not dismiss the Complaint in light of Defendant's fair use defense, even if dismissal at this stage and for this reason may be appropriate. *See Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir.2001) (en banc), *abrogated in part by Twombly*, 550 U.S. at 561–63, 127 S.Ct. 1955 (2007) ("A complaint is ... subject to dismissal under Rule 12(b)(6) when its allegations—on their face—show that an affirmative defense bars recovery on the claim."); *see also Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir.2009) ("[T]here is no reason not to grant a motion to dismiss where the undisputed facts conclusively establish an affirmative defense as a matter of law.... Here, the facts [the plaintiff] alleged in its complaint, as well as attached exhibits, demonstrated ... that the fair use defense conclusively applied as a matter of law."). Instead, the Court simply identifies the likely futility of allowing Plaintiff an opportunity to replead its Complaint in this case.

in good faith only to describe the goods or services of such party, or their geographic origin." 15. U.S.C.A. § 1115(b)(4); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1039 (9th Cir.2010) ("Congress codified this common law principle in the Lanham Act's fair use defense...."); *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496 n. 3 (5th Cir.1979) ("Section 33(b)(4) of the Lanham Act, 15 U.S.C.A. [§ ]1115(b)(4), codifies the common law principle of 'fair use,' under which a party is protected in certain uses of a registrant's otherwise exclusive trademark.").

■■■ To establish a fair use defense, a defendant must prove that its use is "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir.2006). "The 'fair-use' defense, in essence, forbids a trademark registrant to appropriate a descriptive term for [its] exclusive use and so prevent others from accurately describing a characteristic of their goods." *Int'l Stamp Art*, 456 F.3d at 1274 (citing *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir.1980)).

■■■ A defendant who raises the fair use defense—that his use was descriptive, not as a mark, fair, and in good faith—has no burden to negate any likelihood that his allegedly infringing use would confuse consumers about the origin of the goods or services. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 121–24, 125 S.Ct. 542, 160 L.Ed.2d 440 (2004) ("[T]he fair use defendant has no free-standing need to show confusion unlikely, it follows ... that some possibility of consumer confusion must be compatible with fair use, and so it is."). "If any confusion results, that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well known descriptive phrase." *Id.* at 122, 125

S.Ct. 542 (quoting *Cosmetically Sealed Indus., Inc. v. Chesebrough–Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir.1997)).

**1. Use Other Than as a Mark**

■■■ The only type of use that constitutes fair use is use by a defendant in a non-trademark sense. McCarthy, § 11:46 (citing Restatement Third, Unfair Competition § 28 cmt. c (1995)) ("Fair use is a reasonable and good faith use of a descriptive term that is another's trademark to describe rather than to identify the user's goods, services or business."). "The defense permits others to use protected marks in descriptive ways, but not as marks identifying their own products." *Cosmetically Sealed*, 125 F.3d at 30 (citation omitted). The relevant question is whether the use of the phrase is meant to identify the source of the product.

■■■ A putative infringer shows that it uses an allegedly infringing phrase in a non-trademark sense by clearly indicating the actual source of its products. For example, in *Packman v. Chicago Tribune Co.*, 267 F.3d 628 (7th Cir.2001), the Seventh Circuit found that a newspaper's use of an allegedly trademarked phrase was one "otherwise than as a trademark" and constituted fair use. In the case, the Chicago Tribune newspaper used the plaintiff's alleged mark "The joy of six" on its front page and on memorabilia to celebrate the Chicago Bulls's sixth championship win. *Id.* at 632–33. Because the Chicago Tribune's distinctive masthead appeared "prominently on the front page and on each piece of memorabilia containing the phrase," the masthead itself, and not the phrase, clearly identified the source of the products. *Id.* at 639. The court held that "[t]he phrase 'The joy of six' does not identify the source of any of the defendants' memorabilia, and thus, the defendants' use was 'otherwise than as a

[trade]mark.'" *Id.* at 640. Likewise, in *Thoroughbred,* the court recognized that the defendants used their own trademarked names and logos on the face of an allegedly infringing DVD cover to identify the source of the film. *Thoroughbred,* 2008 WL 616253, at \*9–10. In light of this evidence, the court reasoned that "Defendants' use of [the trademark] 'Ruffian' as a title to a film about Ruffian conveys no information about the origin of the film." *Id.*

 Here, even if Plaintiff could amend its Complaint to allege priority, Defendant appears to use the phrases "Lose It!" and "Live It!" in a non-trademarked sense. Defendant clearly identifies the origin of its diet publications with the prominent display of its own trademarks. (*See* Mot. Dismiss Exs. 1–4.) The origin of the diet publications is apparent because Defendant prominently displays the Mayo Clinic name up front, "on the face[s]" of the book covers. (*Id.*) Defendant also displays the official Mayo Clinic logo distinctively near the top of the bindings. (*Id.*) Within each diet publication, Defendant repeatedly references the Mayo Clinic name, frequently in conjunction with the "Lose It!" and "Live It!" phrases. (*Id.,* Ex. 1 at 16, Ex. 2 at 6–10, Ex. 3 at 16, Ex. 4 at 6–10 ("*Lose It!* and *Live It!* are the *doing* parts of *The Mayo Clinic Diet.*").) Defendant only uses the "Lose It!" and "Live It!" phrases as subchapters within the diet publications and not as identifiers of the source of the diet publications. (*Id.* Exs. 1–4). Accordingly, Defendant's use of "Lose It!" and "Live It!" appears "otherwise than as a mark" and thus Defendant is likely to satisfy this first element of its affirmative defense.

### 2. Use in a Descriptive Sense

 The fair use defense permits a defendant "to use a term in its descriptive sense." *Thoroughbred,* 2008 WL 616253, at \*9 (citing *Warner Publ'n, Inc. v. Popular Publ'ns, Inc.,* 87 F.2d 913, 915 (2d Cir.1937) ("The defendant has as good a right to a descriptive title as has the plaintiff."))[10] "Use of a descriptive term in textual ... instructions ... is ordinarily a fair use." *See Cosmetically Sealed,* 125 F.3d at 30 (quoting Restatement (Third) of Unfair Competition § 28 cmt. c (1995)). "The world is still free to use the word in its old, primary and descriptive sense, so long as such use will not tend to confuse customers as to the source of goods or services." McCarthy, § 11:45. "[T]here [is] no indication that the [Lanham Act] was meant to deprive commercial speakers of the ordinary utility of descriptive words." *KP Permanent Make–Up, Inc.,* 543 U.S. at 122, 125 S.Ct. 542.

A defendant who uses a phrase to describe a product or instruct consumers how to use the product generally uses the phrase in a descriptive sense. For example, in *Sunmark, Inc. v. Ocean Spray Cranberries, Inc.,* 64 F.3d 1055 (7th Cir. 1995), the trademark owner of "*Swee* TARTS" sued a cranberry company for advertising that its cranberry juice had a "sweet-tart" flavor. The court affirmed a denial of preliminary injunction, holding that the cranberry company's use of the term "sweet-tart" was a permissible descriptive use. *Sunmark,* 64 F.3d at 1058 ("That *Swee* TARTS is an incontestable mark for sugar candy does not make Sunmark the gatekeeper of these words for the whole food industry.").

Similarly, in *Cosmetically Sealed,* the owner of the trademark "SEALED WITH

---

10. The first and second elements of the affirmative fair use defense are two sides of the same coin. To invoke the defense, a putative infringer must show that it uses the mark to describe the product and not its origin.

A KISS", a mark used to identify the origin of the plaintiff's lip gloss, sued defendant for using the phrase "Seal it with a kiss!" in association with its own lipstick. *Cosmetically Sealed*, 125 F.3d at 29–30. The defendant advertised its lipstick with a countertop cardboard display offering consumers a postcard. *Id.* at 29. "The display invited consumers to ... place a lipstick imprint of her lips on [the postcard], and mail it.... Next to the cards were the words, in slightly larger script type, 'Seal it with a Kiss!!' " *Id.* at 29. Although the two phrases were very similar, and in fact possibly confusing, the court held that defendant's use was descriptive, not as a trademark. *Id.* at 30. In particular, the court found that the phrase was used "to describe an action that the sellers hope consumers will take, using their product." *Id.*

Likewise, Defendant's use of the phrases "Lose It!" and "Live It!" in the allegedly infringing diet publications appears to be descriptive. According to the diet publications, the "Lose It!" subpart is designed to "[jump-start] [the reader's] weight *loss* ... to help [the reader] *lose* 6 to 10 pounds ...." (emphasis added) (Mot. Dismiss Ex. 1 at 10, Ex. 2 at 9.) The "Lose It!" phrase describes what the subchapter is about—*losing* weight. Similarly, the "['Live It!'] section ... is designed to help [the reader] *continue* losing weight ... and then *maintain* that weight as you *Live It! for the rest of your life*." (*Id.* (emphasis added); Mot. Dismiss Ex. 4 at 10.) The "Live It!" phrase describes what the subchapter is about—helping the reader maintain weight loss throughout the rest of the reader's life. Both of these phrases "impart information directly" to readers as to the nature and content of the subchapters. *Chicago Tribune*, 267 F.3d at 640 ("Descriptive terms 'impart information directly.' " (internal quotation marks and citation omitted)); *see also Hensley Mfg.*, 579 F.3d at 613 (affirming

district court's decision to grant defendants' motion to dismiss under fair use because defendants' use of an individual's name was in a descriptive sense).

Although Plaintiff's alleged marks, "Lose IT!" and "Live IT!", and Defendant's phrase, "Lose It!" and "Live It!" both are set out in capital letters with an exclamation mark, this similarity seems immaterial. *See Cosmetically Sealed*, 125 F.3d at 30 ("Defendants' phrase ['Seal it with a kiss!'] is assuredly close to the plaintiff's mark 'SEALED WITH A KISS', differing only in the use of the imperative mood 'seal,' rather than 'sealed,' and the addition of the objective pronoun 'it.' If any confusion results, that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well known descriptive phrase."). If this case were to proceed, Defendant would likely satisfy the second element of the fair use defense because the allegedly infringing phrases are used in a descriptive sense.

### 3. Use in Good Faith

▮▮▮▮ Finally, to invoke the fair use defense, Defendant must show that its use of the allegedly infringing phrase was in good faith. The standard of "good faith" for a fair use defense is whether the alleged infringer intended to trade on "the good will of the trademark owner by creating confusion as to the source of the goods or services." *Int'l Stamp Art*, 456 F.3d at 1274–75. To assess a defendant's good faith, the court inquires into the defendant's "subjective purpose in using the slogan." *Int'l Stamp Art*, 456 F.3d at 1275 (citing *Chicago Tribune*, 267 F.3d at 642). The fact that a defendant uses the mark with actual knowledge of another's use, without consulting counsel, "has no tendency to show bad faith" and does not bar defendant from asserting a fair use defense. *Int'l Stamp Art*, 456 F.3d at 1276

(citing *Car–Freshner Corp. v. S.C. Johnson & Son, Inc.,* 70 F.3d 267, 270 (2d Cir.1995)).

Clearly identifying the actual source of a product—with prominent displays of the defendant's own trademarks, for example—suggests that the defendant used an allegedly infringing phrase in good faith. *See Int'l Stamp Art,* 456 F.3d at 1275 (finding good faith where the defendant prominently placed its familiar trademarks on the back of a trademarked design, "thereby identifying the products as defendant's products rather than the products of anyone else in the marketplace"); *Thoroughbred,* 2008 WL 616253, at \*9 (dismissing plaintiffs' trademark infringement claims because defendants acted in good faith where it conspicuously placed its trademarked logo "ESPN Home Entertainment" and a smaller logo that reads "espnoriginalentertainment" on a DVD cover displaying the disputed phrase); *Cosmetically Sealed,* 125 F.3d at 30 (2d Cir.1997) ("The non-trademark use of the challenged phrase and the defendants' good faith are both evidenced by the fact that the source of the defendants' product is clearly identified by the prominent display of the defendants' own trademarks."); *M.B.H. Enters., Inc. v. WOKY, Inc.,* 633 F.2d 50 (7th Cir.1980) (finding that defendant had not acted in bad faith or with the intent to confuse the public about the source of its services by using the allegedly infringing phrase because it also displayed its own trademark identifying defendant as the source of the service).

Defendant's prominent displays of its own Mayo Clinic name and logo throughout its diet publications demonstrate a lack of intent to capitalize on the good will of Plaintiff's alleged trademarks. (*See* Mot.

Dismiss Exs. 1–4 (excerpts from the allegedly infringing diet books).) Plaintiff has alleged no facts suggesting that Defendant conspired to confuse or mislead consumers into thinking that the sources of its diet publications actually derived from Plaintiff. At most, Plaintiff's allegations of Defendant's bad faith are speculative. *See Hensley Mfg.,* 579 F.3d at 613 ("[Plaintiff] contends ... that 'facts *may exist* that establish that [the phrase] is not being used fairly and in good faith.' But mere speculation [that a phrase is not being used fairly and in good faith] is insufficient; it was [plaintiff's] burden to allege those facts, if they indeed exist, in the first instance."). Thus, as it stands, even if the Court were to allow the Plaintiff to amend its Complaint to allege priority, the Plaintiff may very likely face dismissal on Defendant's fair use defense. Accordingly, the Court declines to provide Plaintiff an opportunity to replead.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Amended Motion to Dismiss [Doc. 23].[11] The Court **DISMISSES** Plaintiff's Complaint and **DIRECTS** the Clerk to close the case.

**IT IS SO ORDERED.**

---

11. The Court **DENIES AS MOOT** Defendant's First Motion to Dismiss [Doc. 16].